UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| FURUKAWA ELECTRIC COMPANY OF NORTH AMERICA; OFS FITEL LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 05-cv-11219-RGS |
| v. | ) ) | |
| YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD., | ) ) ) | |
| Defendant. | ) ) | |

_____

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

July 21, 2005

Richard S. Sanders (BBO# 562014)
Samual A. Miller (BBO# 648568)
Ben N. Kuruvilla (BBO# 657925)
Joshua L. Solomon (BBO# 657761)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)

Table of Contents

Page

Table of Authorities .................................................................................................. ii

Background ...........................................................................................................1

Argument ............................................................................................................4

    I.      Plaintiffs Have Never Served YOFC With the Required Process. ...........................4

          A.     Plaintiffs' Attempted Service on Cutts Does Not Constitute Service on YOFC Under Federal Laws Governing Service of Process...................4

               1.     Plaintiffs Have Not Served YOFC in Accordance With the Statutory Provision for Service of Process in Patent Infringement Actions. ...................................................................5

               2.     Plaintiffs Have Not Served YOFC in Accordance With the Federal Rules of Civil Procedure. ...................................................7

          B.     Plaintiffs' Delivery of Service to Cutts Does Not Constitute Service on YOFC Under Massachusetts's Requirements for Service of Process. ....................................................................................10

    II.     If This Court Does Not Dismiss Plaintiffs' Claims, This Action Should Be Stayed Pending Furukawa's Similar, Pre-Existing Patent Infringement Suit in the U.S. District Court for the Northern District of Georgia......................13

Conclusion .........................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

Caso v. Lafayette Radio Electrics Corp., 370 F.2d 707 (1st Cir. 1966) ........................................13

Consolidated Aluminum Corp. v. Hi-Tech Ceramics Inc., 7 U.S.P.Q. 2d (BNA) 1910
     (W.D.N.Y. 1988) ........................................................................14

Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085 (1st Cir. 1979)...........................................5, 6

Dodco, Inc. v. American Bonding  Co., 7 F.3d 1387 (8th Cir. 1993) ....................................7, 8, 9

Gottlieb v. Sandia American Corp., 452 F.2d 510 (3d Cir. 1971)................................................8, 9

Grantham v. Challenge-Cook Brothers, Inc., 420 F.2d 1182 (7th Cir. 1969) ............................5, 6

Harris v. Gland-O-Lac Co., 211 F.2d 238 (6th Cir. 1954) ................................................................9

Howse v. Zimmer Manufacturing Co., 757 F.2d 448 (1st Cir. 1985) ...........................................12

Johnston v. IVAC Corp., 681 F. Supp. 959 (D. Mass. 1987) ......................................................5, 6

K-Telegraph International, Inc. v. Zuro, 176 U.S.P.Q. (BNA) 464 (D. Minn. 1971) ..................15

Kraemer v. Croix Mgmt. Co., No. Civ. 02-284, 2002 WL 31718426
     (D. Minn. Nov. 21, 2002)  ..........................................................................9

### STATE CASES

Rollins Environmental Services, Inc. v. Superior Court, 368 Mass. 174,
     330 N.E.2d 814 (1975)................................................................11

Sykes v. Dish Networks, 2004 Mass. App. Div. 58 (2005).........................................................11

Thurman v. Chicago, Milwaukee & St. Paul Railway Co., 254 Mass. 569,
     151 N.E. 63 (1926)......................................................................12

Van Christo Adver., Inc. v. M/A-COM/LCS, 426 Mass. 410, 688 N.E.2d 985 (1998) ...............10

Wyshak v. Anaconda Copper Mining Co., 328 Mass. 219, 103 N.E.2d 230 (1952)....................12

## FEDERAL STATUTES and RULES

28 U.S.C. § 1400(b) ...................................................................................................5

28 U.S.C. § 1694 ..................................................................................................5, 7

Fed. R. Civ. P. 4(h) ....................................................................................4, 7, 10, 11

Fed. R. Civ. P. 12(b)(2) ............................................................................................1

Fed. R. Civ. P. 12(b)(5) ............................................................................................1

## STATE STATUTES and RULES

Mass. Gen. Laws ch. 90, § 3A ..................................................................................7

Mass. Gen. Laws ch. 223, § 37 ..............................................................................11

Mass. Gen. Laws ch. 223, § 38 ....................................................................11, 12, 13

Mass. R. Civ. P. 4(d)(2) ....................................................................................10, 11

## OTHER

Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in
        Civil and Commercial Matters.........................................................................4

U.S. Department of State, Treaties in Force, A List of Treaties and Other International
        Agreements of the U.S. in Force on January 1, 2004 (2004).........................4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
FURUKAWA ELECTRIC COMPANY          )
OF NORTH AMERICA; OFS FITEL LLC,  )
                                                    )
          Plaintiffs,                          )          Civil Action No.:
                                                    )          05-cv-11219-RGS
v.                                                  )
                                                    )
YANGTZE OPTICAL FIBRE AND          )
CABLE COMPANY LTD.,                     )
                                                    )
          Defendant.                         )
_____)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

Defendant Yangtze Optical Fibre and Cable Co. Ltd. ("YOFC" or "Defendant")

respectfully submits this memorandum of law in support of its Motion To Dismiss or, in the

Alternative, To Stay Proceedings.  YOFC moves to dismiss the Complaint pursuant to Fed. R.

Civ. P. 12(b)(2) and 12(b)(5), on the ground that Plaintiffs Furukawa Electric Co. of North

America ("Furukawa") and OFS Fitel LLC ("OFS") (collectively, "Plaintiffs") have not served

process on YOFC and, as a result, that this Court lacks personal jurisdiction over YOFC.

Alternatively, YOFC requests that the Court stay these proceedings pending resolution of a

separately filed and pending matter that may conclusively decide many of the issues in this

action.

## BACKGROUND

On June 10, 2005, Plaintiffs brought this action for patent infringement against YOFC, a

Chinese corporation that develops, manufactures, and sells optical fiber and cable products.  The

Complaint alleges four counts of infringement of four U.S. patents.  The Complaint does not

identify which of YOFC's products allegedly infringe the patents.

None of the parties to this action is incorporated in or has a principal place of business in Massachusetts. <u>See</u> Complaint ¶¶ 2-4. For its part, YOFC maintains its place of business in Wuhan, China. Declaration of Niels Gade, dated July 18, 2005 ("Gade Decl."), ¶ 2. YOFC has never rented, used, or possessed facilities or offices in Massachusetts. <u>Id.</u> ¶ 3. YOFC has never had employees living or regularly working in Massachusetts. <u>Id.</u> YOFC keeps no inventory in Massachusetts. <u>Id.</u> In fact, YOFC currently has no stock of its product anywhere in the United States. <u>Id.</u> Nor has YOFC ever maintained bank accounts, telephone listings, or mailing addresses in Massachusetts. <u>Id.</u> YOFC has never been obligated to pay any taxes in Massachusetts, and it has not appointed any agent for service of process in Massachusetts. <u>Id.</u>

On June 10, 2005, Plaintiffs served a summons and a copy of the Complaint on Crawford Cutts ("Cutts"), the President and sole shareholder of Antares Development International, LLC ("Antares"), at Antares's Sturbridge, Massachusetts offices. <u>See</u> Declaration of Crawford Cutts, dated July 15, 2005 ("Cutts Decl."), ¶¶ 1, 3. Plaintiffs filed a return of service with this Court on June 21, 2005. No other returns of service have been filed, and YOFC is unaware of any other efforts by Plaintiffs to effect service upon YOFC.

YOFC and Antares have no relationship other than a mere contractual one. Neither YOFC nor Antares owns any stake in the other. Gade Decl. ¶ 4; Cutts Decl. ¶ 4. Neither Cutts nor any other officer or employee of Antares is, or ever has been, an officer or an employee of YOFC. Gade Decl. ¶ 5; Cutts Decl. ¶ 5. Pursuant to a contract between Antares and YOFC (the "Agreement"), Antares serves as a sales representative for YOFC in North America. <u>See</u> Cutts Decl. ¶ 6 & Exhibit A thereto (Sales Representative Agreement). Antares and Cutts do not provide any services for YOFC beyond those called for by the Agreement. <u>See</u> Cutts Decl. ¶ 6.

Facts concerning the relationship between Antares and YOFC relevant to this motion include the following:

- Antares maintains its own office space and facilities, at its own cost.  Agreement, ¶ 2.

- Antares maintains its own trained sales organization, at its own cost.  Agreement, ¶ 2.

- YOFC does not reimburse Antares for any costs of doing business.  Agreement, ¶ 2.

- Antares is paid on a commission basis.  Antares and Cutts do not draw any salary from YOFC.  Agreement, ¶¶ 2, 6.

- Antares has "no authority to bind [YOFC] in any manner whatsoever."  Agreement, ¶ 7.

- YOFC, not Antares, sets the terms, prices, and conditions of all sales to YOFC customers.  Agreement, ¶ 7.

- YOFC, not Antares, has full discretion to accept or reject any requests for products that Antares delivers to YOFC on behalf of YOFC customers or potential customers.  Agreement, ¶ 7.

- Antares expressly acknowledges "that it is not a franchisee or dealer within the meaning of any federal or state statute or regulation."  Agreement, ¶ 8.

- The Agreement places no restrictions on Antares's or Cutts's ability to work with other companies beyond YOFC, except that Antares has agreed not to sell the products of YOFC's direct competitors.  Agreement, ¶ 3.

Antares's work for YOFC in Massachusetts has in fact been limited merely to seeking out new customers for YOFC's optical fiber products.  Thus, Antares has engaged in no activities in Massachusetts beyond those for which the Agreement calls.  See Cutts Decl. ¶ 7.  Antares has always complied with the terms of the Agreement, has forwarded all requests for products to YOFC, and has never attempted to bind YOFC or to set prices, terms, or conditions for the sale of YOFC products.  See id. ¶ 8.  Finally, YOFC has not sold any product into Massachusetts to leads generated by Antares.  Nor has Antares ever attempted to place any orders with YOFC for Massachusetts customers.  Id. ¶ 9.  Antares has also never provided customer support to purchasers of YOFC products in Massachusetts.  Id.

## ARGUMENT

### I.    PLAINTIFFS HAVE NEVER SERVED YOFC WITH THE REQUIRED PROCESS.

As Plaintiffs likely know, China is a party to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention").  See U.S. Dept. of State, Treaties in Force, A List of Treaties and Other Int'l Agreements of the U.S. in Force on January 1, 2004, at 416 (2004).  Nevertheless, Plaintiffs have chosen not to comply with the requirements of the Hague Convention.  Plaintiffs have never served YOFC in its home country or anywhere else.  Instead, Plaintiffs purport to have served YOFC indirectly, by serving Cutts at Antares's place of business in Massachusetts.

Antares and Cutts, however, are not YOFC.  Nor is the relationship between YOFC and Antares such that service on Cutts satisfies Plaintiffs' obligation to serve YOFC.  Indeed, the two companies are legally distinct entities with nothing more connecting them than the arm's-length contractual relationship described above.

Fed. R. Civ. P. 4(h)(1) governs service of process on corporate defendants where that service is attempted within the United States.  According to that rule, a plaintiff can successfully effect service by complying with either (1) federal requirements for service of process or (2) requirements for service established by the laws of the state in which the federal court sits or in which service was purportedly made.  Plaintiffs have not satisfied Fed. R. Civ. P. 4(h)(1).

### A.    Plaintiffs' Attempted Service on Cutts Does Not Constitute Service on YOFC Under Federal Laws Governing Service of Process.

To effect service of process on YOFC in accordance with federal procedures, Plaintiffs may comply with any applicable federal statutes or with the specific mechanisms for service in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 4(h).  Plaintiffs have not complied with any statute or rule.

- 4 -

> 1.     Plaintiffs Have Not Served YOFC in Accordance With the
>        Statutory Provision for Service of Process in Patent Infringement Actions.

Section 1694 of 28 U.S.C. provides a mechanism for service of process in patent infringement actions. That statute provides: "In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business." 28 U.S.C. § 1694.

Plaintiffs' attempted service on Cutts did not satisfy the requirements of this statute. More specifically, because 28 U.S.C. § 1694 requires a "regular and established place of business," which YOFC does not maintain in Massachusetts, Plaintiffs are unable to avail themselves of this statute. As this Court has recognized, the term "regular and established place of business" applies only if the defendant "maintains, controls, and pays for a permanent physical location from which sales are made within the district." Johnston v. IVAC Corp., 681 F. Supp. 959, 962 (D. Mass. 1987). In fact, even where the defendant has a physical location within the district, a plaintiff must also show that the local staff does more than merely solicit business.[1] Id. at 962-63. As mentioned above, YOFC does not maintain any office in Massachusetts. Gade Decl. ¶ 3. Nor does it maintain employees, inventory, phone numbers, addresses, or bank accounts here. Id. In short, YOFC has *no* place of business in Massachusetts, much less a "regular and established" place of business.

---

[1] Johnston, as well as Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085 (1st Cir. 1979) (discussed below), was applying the phrase "regular and established place of business" as it appears in 28 U.S.C. § 1400(b), which governs venue in patent infringement cases. As the Seventh Circuit has noted, however, the phrase has the same meaning in both § 1400(b) and § 1694. Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1186 (7th Cir. 1969).

Furthermore, Plaintiffs cannot feasibly rely on Antares's offices as a "regular and established place of business" for YOFC. Antares is a wholly independent entity, connected to YOFC only through a contract for particular, limited services. Cutts Decl. ¶¶ 4-6. Under the Agreement, Antares is responsible for its own expenses, staffing, and offices. Agreement, ¶ 2. YOFC does no more than pay commissions to Antares for any new business that Antares may generate. Id. And to date, Antares has not generated *any* new business for YOFC within Massachusetts. Cutts Decl. ¶ 9.

In interpreting the phrase, "regular and established place of business," this Court has previously rejected as insufficient far more direct and substantive contacts with Massachusetts than those that YOFC could arguably be said to have as a result of its relationship with Antares. For example, as with YOFC, the defendant corporation in Johnston v. IVAC Corp. reserved the right to accept or reject any orders from the local sales representatives, neither owned nor leased office property in the state, maintained no bank accounts in Massachusetts, and kept no inventory in Massachusetts. Johnston, 681 F. Supp. at 960. More importantly, *unlike* YOFC, the foreign defendant corporation in Johnston (1) directly employed sales staff who lived and worked in Massachusetts, (2) paid that staff both salaries and commissions, (3) paid for the expenses incurred by the sales staff, (4) listed a local phone number in several local directories, and (5) registered in Massachusetts as a foreign corporation. Id. at 960-61, 964. Notwithstanding such activity, this Court still found that the defendant's conduct within the state did not rise to the level of having a regular and established place of business. Id. at 964; see also Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086-87 (1st Cir. 1979) (finding no regular and established place of business despite the existence of an "exclusive sales agent for [defendant] in New England and more particularly in Massachusetts"); Grantham v. Challenge-Cook Bros., Inc., 420

- 6 -

F.2d 1182, 1186 (7th Cir. 1969) (finding no regular and established place of business from defendant's relationship with its local distributor).

Given the high threshold for the creation of a regular and established place of business, Plaintiffs cannot demonstrate that YOFC has established such a presence in Massachusetts. As a result, Plaintiffs have not met, and cannot possibly meet, the requirements for service of process under 28 U.S.C. § 1694.

2.      Plaintiffs Have Not Served YOFC in
        Accordance With the Federal Rules of Civil Procedure.

Because Plaintiffs have chosen not to comply with the Hague Convention, and because they have not satisfied 28 U.S.C. § 1694, the procedures provided by Fed. R. Civ. P. 4(h) are their only remaining federal-law bases for service of process. That Rule permits service on a foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). As mentioned above, Cutts is not an officer of YOFC and has not been appointed as an agent for service of process. Gade Decl. ¶ 5. Nor does any law authorize Cutts to receive process for YOFC.[2] As a result, the term "managing or general agent" is the only language on which Plaintiffs might attempt to rely to justify their service on Cutts and their failure to serve YOFC itself.

As federal courts have interpreted the term, however, Cutts and Antares fall far short of being YOFC's "managing or general agent." For example, in Dodco, Inc. v. American Bonding

---

[2] The "authorized . . . by law" language of Fed. R. Civ. P. 4(h)(1) refers to situations in which the law designates a particular person to receive process when a defendant engages in certain activities within the jurisdiction. For example, Mass. Gen. Laws ch. 90, § 3A designates the Registrar of Motor Vehicles as a non-resident motorist's agent for service of process in any suit arising out of a car accident in Massachusetts involving that motorist.

<u>Co.</u>, 7 F.3d 1387 (8th Cir. 1993), the Eighth Circuit ruled, on facts quite similar to those in this case, that a local sales representative was not a "managing agent," and thus that service of process on that sales representative did not constitute proper service.  As with Cutts, the person whom the plaintiff in <u>Dodco</u> had served was an officer of a company hired to act as the out-of-state defendant's sales representative.  <u>Id.</u> at 1388.  The court noted that a sales representative is not a managing agent where that "salesman was not vested with discretion in establishing prices, terms, or conditions of contracts or orders and [where] any contracts entered into or orders taken were subject to company approval outside the state."  <u>Id.</u> (internal quotation marks and editing omitted).  Because the sales agent in <u>Dodco</u> possessed no general power of attorney, was not authorized to accept service of process, and had no power to accept or reject particular deals without consulting with the defendant's home office, the court held that the local agent's activities were not that of a managing agent.  <u>Id.</u> at 1389.  The agent's activities, the court concluded, simply did not go "beyond the normal scope of a sales agency."  <u>Id.</u> (internal quotation marks omitted).

Similarly, in <u>Gottlieb v. Sandia American Corp.</u>, 452 F.2d 510, 513 (3d Cir. 1971), the court noted that "it is reasonable to expect that [a managing or general] agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity."  That court also held that such an agent "typically will perform duties which are sufficiently necessary to the corporation's operations," and that he "should be a responsible party in charge of any substantial phase of the corporation's activity."  <u>Id.</u> (internal quotation marks omitted).  The court went on to hold that the plaintiff had failed to meet its burden of showing that the person served was a managing or general agent.  <u>Id.</u> at 514-15.  The court so concluded, despite the fact that the person served was a controlling stockholder of the defendant, negotiated the very agreements

that were at the core of the litigation, and was listed in those agreements as the person to whom

notice under the agreements should be given. Id. at 512; see also Harris v. Gland-O-Lac Co.,

211 F.2d 238, 238 (6th Cir. 1954) ("[T]he issue in this case is reduced to a determination of the

question whether [the individual served] was a managing agent. . . .  The uncontroverted proofs

submitted by the above-mentioned affidavits disclosed that [he] was only a salesman, without

managerial duties, and that none of his activities resulted in his being a managing agent of

appellee company."); Kraemer v. Croix Mgmt. Co., No. Civ. 02-284, 2002 WL 31718426, at *2

(D. Minn. Nov. 21, 2002) (pointing out that a managing agent is "a person possessing and

exercising the right of general control, authority, judgment, and discretion over the business or

affairs of the corporation," or "who ha[s] charge and control of the business activities of the

corporation or of some branch or department thereof, and who, in respect to the matters entrusted

to [him, is] vested with powers requiring the exercise of an independent judgment and

discretion" (internal quotation marks omitted)) (for the Court's convenience, a copy of Kraemer

is attached as Exhibit A hereto).

    As mentioned above, Antares has no authority to bind YOFC.  Indeed, the Agreement is

clear on this point, expressly stating that Antares "shall have no authority to bind [YOFC] in any

manner whatsoever."  Agreement, ¶ 7.  Antares also has no discretion to set prices, terms, and

conditions of sales.  Id.  Antares merely seeks out potential customers, and then sends all offers

along to YOFC in China, where YOFC decides, in its sole discretion, whether to accept or fill a

customer's request.  Id.  Further, YOFC does not support Antares financially in the performance

of Antares's contractual obligations, as Antares is responsible under the Agreement for all of its

own costs and staffing.  Id. ¶ 2.  Given these facts, Antares clearly is not YOFC's managing or

general agent.  See Dodco, 7 F.3d at 1388-89; Gottlieb, 452 F.2d at 513-15.  Rather, Antares is

an independent sales agent for YOFC, whose activities in Massachusetts on behalf of YOFC have been limited to seeking new customers for YOFC.  Thus, Plaintiffs' delivery of the summons and Complaint to Cutts – an officer of Antares, but not of YOFC – was insufficient to constitute service of process on YOFC under Fed. R. Civ. P. 4(h).

**B.    Plaintiffs' Delivery of Service to Cutts Does Not Constitute Service
     on YOFC Under Massachusetts's Requirements for Service of Process.**

As mentioned above, the Federal Rules of Civil Procedure also permit service consistent with state procedures.  Massachusetts law, as with federal law, provides both rule-based and statutory mechanisms for service.  As with the federal procedures, however, Plaintiffs have failed to comply with the applicable state rules or statute.

The applicable provision of the Massachusetts Rules of Civil Procedure mirrors Fed. R. Civ. P. 4(h).  Specifically, Mass. R. Civ. P. 4(d)(2) states, in relevant part:

> Service shall be made . . . [u]pon . . . a foreign corporation subject to suit within the Commonwealth . . . by delivering a copy of the summons and of the complaint to an officer, to a managing or general agent, or to the person in charge of the business at the principal place of business thereof within the Commonwealth, if any; or by delivering such copies to any other agent authorized by appointment or by law to receive service of process . . . .

As explained above, Cutts is not an officer of YOFC.  Gade Decl. ¶ 5.  Nor has he been authorized to receive service by appointment or by law.  Id.  Thus, the analysis under the Massachusetts rule also comes down to whether Antares is a managing or general agent of YOFC.

The Massachusetts Supreme Judicial Court has held consistently that where the state rule of civil procedure is modeled on the federal rule, Massachusetts courts should interpret that state rule consistent with the federal rule.  See, e.g., Van Christo Adver., Inc. v. M/A-COM/LCS, 426 Mass. 410, 414, 688 N.E.2d 985, 989 (1998) ("In construing our rules, we follow the construction given to the Federal rules 'absent compelling reasons to the contrary or significant

differences in content.'" (quoting <u>Rollins Envtl. Servs., Inc. v. Superior Court</u>, 368 Mass. 174,

179-80, 330 N.E. 2d 814, 818 (1975))).  As the above-quoted language from Mass. R. Civ. P.

4(d)(2) demonstrates, Massachusetts's rule for service upon a foreign corporation is virtually

identical to the corresponding federal rule.  As a result, the term "managing or general agent" in

Mass. R. Civ. P. 4(d)(2) means the same thing as it does in Fed. R. Civ. P. 4(h).  Thus, the above

analysis regarding Antares's failure to qualify as YOFC's managing or general agent applies

with equal force in the state law context as well.  See <u>Sykes v. Dish Networks</u>, 2004

Mass.App.Div. 58 (2005) (holding that service was improper under Mass. R. Civ. P. 4(d)(2), and

relying on the interpretation of "managing or general agent" under the federal rule, as articulated

in <u>Gottlieb v. Sandia American Corp.</u> (discussed supra)).  Because Cutts is not a managing or

general agent of YOFC, Plaintiffs' delivery of service to Cutts does not satisfy the requirements

of Mass. R. Civ. P. 4(d)(2).

     Plaintiffs also cannot successfully rely on Mass. Gen. Laws ch. 223, § 38, the

Massachusetts statute that provides a particular mechanism for service on foreign corporations.

That statute states:

> In an action against a foreign corporation . . . which has a usual place of business
> in the commonwealth, or, with or without such usual place of business, is engaged
> in or soliciting business in the commonwealth, permanently or temporarily,
> service may be made in accordance with the provisions of [Mass. Gen. Laws ch.
> 223, § 37] relative to service on domestic corporations in general . . . .

Mass. Gen. Laws ch. 223, § 37, which § 38 references, provides, in relevant part:

> In an action against a domestic corporation . . . service shall be made upon the
> president, treasurer, clerk, resident agent appointed pursuant to section 49 of
> chapter 156D, cashier, secretary, agent or other officer in charge of its business,
> or, if no such officer is found within the county, upon any member of the
> corporation.

Thus, if Plaintiffs were to serve YOFC under Mass. Gen. Laws ch. 223, §§ 37 and 38, they

would be required to demonstrate that YOFC, through Antares, engaged in business within the

Commonwealth in a manner described in Mass. Gen. Laws ch. 223, § 38. Plaintiffs cannot satisfy this requirement.

Plaintiffs cannot demonstrate that YOFC has engaged in the types of Massachusetts-based business activities required by Mass. Gen. Laws ch. 223, § 38. That is, YOFC's contacts with Massachusetts, through Antares, are too fleeting and insubstantial to satisfy this statute. YOFC has no Massachusetts employees, pays no salaries to Massachusetts-based staff, and maintains no office here. Gade Decl. ¶ 3. YOFC does not bear the sales expenses of Antares, which merely serves as YOFC's independent sales contractor. Agreement, ¶ 2. Furthermore, and most importantly for the purposes of § 38, Antares has done nothing more than merely solicit new business prospects for YOFC's products. Cutts Decl. ¶ 7. In fact, Antares's conduct has never caused or resulted in a single sale of YOFC products to a Massachusetts customer. Id. ¶ 9.

The Massachusetts Supreme Judicial Court long ago established that Mass. Gen. Laws ch. 223, § 38 requires significant activity by the agent or employee in Massachusetts. In Wyshak v. Anaconda Copper Mining Co., 328 Mass. 219, 222, 103 N.E.2d 230, 232 (1952), the Court pointed out that it had earlier held that "the simple solicitation of business by [a foreign] corporation [does] not constitute such a doing of business as to render it subject to the service of process" (citing Thurman v. Chicago, Milwaukee & St. Paul Ry. Co., 254 Mass. 569, 151 N.E. 63 (1926)). Moreover, the First Circuit has noted that no Massachusetts state court has ever found "mere solicitation" sufficient to satisfy Mass. Gen. Laws ch. 223, § 38. See, e.g., Howse v. Zimmer Mfg. Co., 757 F.2d 448, 451 (1st Cir. 1985) ("In brief, we have found no Massachusetts case decided in the 19 years since [we last spoke to the issue] to indicate that mere solicitation would be a sufficient basis for section 38 jurisdiction."). Because Antares is

not YOFC, and because Antares has done no more for YOFC in Massachusetts than merely

solicit potential new customers, § 38 does not apply and cannot save Plaintiffs' defective service.

Finally, the fact that Antares is not only a separate legal entity from YOFC, but a wholly

distinct business in its own right, not owned or controlled by YOFC, further undermines any

attempt by Plaintiffs to rely on § 38.  As the First Circuit has noted, it is particularly difficult for

a plaintiff to invoke § 38 based on the actions of a defendant's local sales agent, where that sales

agent acts for its own benefit and not solely for the benefit of the non-resident.  See Caso v.

Lafayette Radio Elecs. Corp., 370 F.2d 707, 713 (1st Cir. 1966) (distinguishing cases in which

courts found that Mass. Gen. Laws ch. 223, § 38 applied, on the ground that "in those cases the

soliciting agent acted solely for the benefit of the defendant, while here there is some evidence

that [the local agent] itself benefited.").

Accordingly, because of the limited nature of Antares's Massachusetts conduct on behalf

of YOFC, any indirect contacts that YOFC has with Massachusetts through Antares cannot

subject YOFC to service of process through Antares or Cutts under § 38.

II.   **IF THIS COURT DOES NOT DISMISS PLAINTIFFS' CLAIMS, THIS ACTION SHOULD BE STAYED PENDING FURUKAWA'S SIMILAR, PRE-EXISTING PATENT INFRINGEMENT SUIT IN THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA.**

In August 2002, Furukawa (then Fitel USA Corp.) filed a patent infringement action in

the Northern District of Georgia, captioned Fitel USA Corp. v. Fibercore, Inc., Civ. A. No. 02-

02149-CAP (the "Georgia Action").  See Docket Report, attached as Exhibit A to the

Declaration of Joshua L. Solomon, dated July 21, 2005 ("Solomon Decl.").  In that action,

Furukawa alleges that the defendants have infringed three of the four patents at issue in this case.

See Georgia Action Fourth Amended Complaint, attached as Exhibit B to Solomon Decl.  Those

defendants, in turn, have claimed that all three patents are invalid.  <u>See</u> Georgia Action Answer and Counterclaim, attached as Exhibit C to Solomon Decl.

In the Georgia action, discovery regarding the proper construction of the claims of the asserted patents is scheduled to close in less than two weeks (on August 1, 2005).  Briefing on claim construction will be complete by September 1, 2005.  Fact discovery will close 45 days after the court issues its Markman claim construction ruling.  The period for expert witness depositions will close 107 days after that.  <u>See</u> Scheduling Order, attached as Exhibit D to Solomon Decl.

In light of the Georgia Action – and in particular the defendants' challenge to the validity of three of the same patents at issue here – YOFC respectfully requests that this Court stay this action pending resolution of the Georgia Action.  YOFC makes this request in the interest of avoiding the wasting of judicial resources, and any unnecessary litigation costs, including the costs of intensive paper discovery and international depositions, which this case would likely bring.

In a patent infringement action, a federal court has the authority to grant a stay as part of its "inherent power to control its own docket, with an eye towards economy of time and effort for itself, counsel and parties."  <u>Consol. Aluminum Corp. v. Hi-Tech Ceramics Inc.</u>, 7 U.S.P.Q.2d (BNA) 1910, 1910 (W.D.N.Y. 1988).  These considerations undeniably favor a stay here, given that another federal court has been asked to determine the validity of three of the four patents at issue in this case.  That court's validity determinations could well limit or eliminate most of the claims in this case, as any determination of invalidity would have preclusive effect against Furukawa.  <u>See</u> <u>id.</u> at 1911 ("Due to the possibility of a collateral estoppel defense in this Court, should a patent or patents be found to be invalid in the Northern District of Illinois, and also to

- 14 -

the common issues involved with respect to the four patents – infringement and validity –

simultaneous progressing of litigation in the Northern District of Illinois and here would be

superfluous and a waste of this Court's and the attorneys' time.").

Furthermore, most of the other considerations on which courts in patent infringement

actions rely when determining whether to stay a proceeding also point persuasively toward

staying this case.  These considerations include:  when, in relation to one another, the respective

actions were filed; comity between federal courts; avoidance of unnecessary costs to the various

litigants; avoidance of potential conflicts in judicial determinations; and the respective stages of

the two litigations.  See, e.g., K-Tel Int'l, Inc. v. Zuro, 176 U.S.P.Q. (BNA) 464, 465 (D. Minn.

1971).  The Georgia Action pre-dates Plaintiffs' filing of this case by almost three years.  Any

substantive ruling on the patents' validity in that case will, therefore, likely come long before any

equivalent ruling in this case.  All told, considerations of cost, comity, and convenience all

unquestionably favor a stay.

## CONCLUSION

For the foregoing reasons, YOFC respectfully requests that this Court dismiss this action

for improper service and lack of personal jurisdiction.  In the event that this Court does not grant

YOFC's motion to dismiss, YOFC respectfully requests that this Court stay this action until the

conclusion of Fitel USA Corp. v. Fibercore, Inc., Civ. A. No. 02-02149-CAP (N.D. Ga. filed

Aug. 2, 2002).

Respectfully submitted,

Dated:  July 21, 2005                    YANGTZE OPTICAL FIBRE AND CABLE CO.
                                         LTD.,

                                         By its attorneys,

                                         /s/ Samual A. Miller
                                         Richard S. Sanders (BBO# 562014)
                                         *rsanders@sandw.com*
                                         Samual A. Miller (BBO# 648568)
                                         *smiller@sandw.com*
                                         Ben N. Kuruvilla (BBO# 657925)
                                         *bkuruvilla@sandw.com*
                                         Joshua L. Solomon (BBO# 657761)
                                         *jsolomon@sandw.com*
                                         SULLIVAN & WORCESTER LLP
                                         One Post Office Square
                                         Boston, MA 02109
                                         (617) 338-2800 (phone)
                                         (617) 338-2880 (fax)

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
2002 WL 31718426 (D.Minn.)
**(Cite as: 2002 WL 31718426 (D.Minn.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Peter KRAEMER and Charmaine Kraemer, Plaintiff,
v.
CROIX MANAGEMENT COMPANY; John Doe,
Owner of Turtle Lake Villas; and Marge
Alden, Defendants.
**No. Civ. 02-284 (JRTSRN).**

Nov. 21, 2002.
Peter Kraemer and Charmaine Kraemer, Comstock,
Wisconsin, plaintiffs pro se.

Robert E. Kuderer, Johnson & Condon, P.A.,
Minneapolis, MN, for defendants Croix Management
and Marge Alden.

ORDER

TUNHEIM, J.

*1 Plaintiffs Peter and Charmaine Kraemer filed this
action against Croix Management Company
("Croix"), Marge Alden ("Alden"), and John Doe,
owner of Turtle Lake Villas, LLC ("John Doe").
Defendants manage (Croix and Alden) and own
(John Doe) the apartment complex in which plaintiffs
resided. The case is before the Court on the plaintiffs'
motion for default judgment against John Doe,
pursuant to Rule 55 of the Rules of Civil Procedure,
and/or judgment on the pleadings, under Rule 12.

BACKGROUND

Plaintiffs moved into Turtle Lake Villas ("Turtle
Lake") in early October 1999. Plaintiffs qualified for
tax credits, and provided information documenting
their income qualifications to Turtle Lake. Plaintiffs
lived in relative tranquility for some time, but in
March 2000 they claim they began to receive copies
of parts of the tenant application they had previously
completed. According to plaintiffs, management
repeatedly asked them to sign and return parts of the
application; these requests were so frequent that they
became menacing. Plaintiffs complain that

management harassed them in other ways; for
instance, maintenance workers appeared at plaintiffs'
home and demanded immediate access to the home,
and their garage was accessed without permission.
Plaintiffs claim that this harassment continued at least
through January 2001.

Plaintiffs' lawsuit asserts diversity jurisdiction and
alleges harassment, breach of contract, extortion,
conspiracy, and intentional infliction of emotional
distress. Plaintiffs seek compensatory and punitive
damages in excess of $175,000.

Plaintiffs assert that John Doe, owner of Turtle Lake,
was served with process in accordance with Rule 4(c)
and (e)(2) of the Rules of Civil Procedure.
Specifically, they claim that process was served on
Linda Udberg, an administrative coordinator for
defendants Croix and Alden. Plaintiffs note that
Croix and Alden, on behalf of Turtle Lake filed a
complaint against them in Polk County, Wisconsin.
These facts, plaintiffs argue, demonstrate that Croix
is essentially an alter ego for Turtle Lake, and
therefore John Doe has been properly made a party to
this lawsuit. Plaintiffs claim that John Doe is in
default because he has not answered within the
requisite time.

ANALYSIS
I. Default Judgment

The Rules of Civil Procedure provide for two types
of default judgment. One is entered by the clerk of
court (Rule 55(b)(1)), and the other is entered by the
Court (Rule 55(b)(2)). While a 55(b)(1) judgment can
be entered as a matter of course, this Court has
discretion to enter, or refuse to enter, a 55(b)(2)
judgment. Fed.R.Civ.P. 55. The Court must have
jurisdiction over the defaulting party in order to
properly enter a default judgment, which may be
entered only if the defendant has been made party to
the action by service of process. Dedco, Inc., v.
American Bonding Co., 7 F.3d 1387, 1388 (8th
Cir.1993) (citing Cohen v. Newsweek, Inc., 312 F.2d
76, 77-78 (8th Cir.1963)); 10A Charles Allen Wright,
Arthur R. Miller & Mary Kay Kane, Federal
Practice and Procedure § 2682 (3rd ed.1998).

II. Service of Process

*2 Because this Court lacks jurisdiction over

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2
2002 WL 31718426 (D.Minn.)
**(Cite as: 2002 WL 31718426 (D.Minn.))**

defendants who have not properly been served, _Dedco, 7 F.3d at 1388_, the Court must determine whether plaintiff effectively served John Doe.

Plaintiffs claim handing a copy of the summons and complaint to Linda Udberg, an administrative coordinator for Croix, effectuated service on John Doe. Defendants Croix and Alden argue that plaintiffs' attempted service was ineffective. They assert that neither Croix nor Alden was authorized to accept service on behalf of Turtle Lake and further that there is no affidavit of service purporting to establish the requisite service.

In addition, defendants Croix and Alden submit the affidavit of Tim Nolde,  [FN1] owner of Turtle Lake, which states that Nolde has not been served with process, and that he is not aware that any attempts have been made to serve Turtle Lake. Defendants also argue that default judgments cannot be had against fictitious "John Doe" defendants.

> FN1. Apparently, Tim Nolde is the true name of defendant "John Doe."

The Court finds that service was not effective on the John Doe defendant. When serving process on a corporation, the Rules of Civil Procedure require that service be made on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process...." _Fed.R.Civ.P. 4(h)(1)_. Wisconsin courts define the term "managing agent" as "a person possessing and exercising the right of general control, authority, judgment, and discretion over the business or affairs of the corporation...." _Carroll v. Wisconsin Power & Light Co., 79 N.W.2d 1, 3 (Wis.1956)_. Minnesota courts define the term similarly: those agents who "have charge and control of the business activities of the corporation or of some branch or department thereof, and who, in respect to the matters entrusted to them are vested with powers requiring the exercise of an independent judgment and discretion." _Tullis v. Federated Mut. Ins. Co., 570 N.W.2d 309, 311 (Minn.1997)_.

Plaintiffs have not shown that Croix or Alden was authorized to accept service for Turtle Lake. Plaintiffs also failed to show that Udberg, the administrative coordinator with whom the summons and complaint were left, was a managing or general agent, or was an agent authorized to accept service for Turtle Lake. Thus, service was not effective on the John Doe defendant.

The Federal Rules provide that service must be made within 120 days of filing the complaint. The complaint in this case was filed January 31, 2002, and therefore service of process was required by the end of May. Where process has not been made within 120 days, _Rule 4(m)_ allows the Court, on its own initiative, to direct that service be effected within a specified time. As such, the Court directs that plaintiffs serve the John Doe defendant no later than December 15, 2002. Failure to serve the defendant by that time will result in the dismissal of the action as to the John Doe defendant.

ORDER

Based on the foregoing, all the records, files, and proceedings herein, IT IS HEREBY ORDERED that:

**\*3** 1. Plaintiffs' motion for default judgment against John Doe [Docket No. 9] is DENIED.

2. Plaintiffs shall properly serve defendant John Doe, the owner of Turtle Lake Villas, LLC, no later than December 15, 2002 or the Court will dismiss John Doe as a defendant.

2002 WL 31718426 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

•                           0:02CV00284                (Docket) (Jan. 31, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.