UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FURUKAWA ELECTRIC COMPANY OF NORTH AMERICA; OFS FITEL LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-11219 RGS |
| vs. | ) ) ) | |
| YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD., | ) ) ) | |
| Defendant. | ) ) | |

**<u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

Factual Background ...........................................................................................................3

Argument ...........................................................................................................................5

    I.     YOFC's Contacts With Massachusetts Are Sufficient for the Court
           to Exercise Personal Jurisdiction Over It For This Action ......................................5

    II.    Service on Cutts was Effective as He is YOFC's "General or
           Managing Agent" for Purposes of Service of Process Under Rule
           4(h)(1) of the Federal Rules of Civil Procedure. .....................................................9

    III.   The Court Should Approve Service of YOFC Through
           Antares/Cutts Pursuant to Rule 4(f)(3) of the Federal Rules of Civil
           Procedure .................................................................................................................15

    IV.   If the Court Determines that the Undisputed Facts Do Not
           Establish The Sufficiency of Service on YOFC Through Cutts,
           Expedited Discovery Should Be Allowed To Determine The Exact
           Nature and Scope of the Relationship Between YOFC and
           Antares/Cutts...........................................................................................................16

    V.    The Court Should Not Stay This Matter. ................................................................16

CONCLUSION ..................................................................................................................20

## TABLE OF AUTHORITIES

Page

**Cases**

*"Automatic" Sprinkler Corp. v. Seneca Foods Corp.*, 361 Mass. 441 (1972) ............................... 6

*Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) ..................................... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................ 8, 9

*Callicrate v. New Age Industrial Corp., Inc.*, 2005 WL 1027095 (D. Kan. 2005)...................... 19

*Campbell v. Frontier Fishing and Hunting Ltd.*, 10 Mass. App. Ct. 53 (1980) ........................... 14

*Caso v. Lafayette Ratio Electronics Corp.*, 370 F.2d 707, 712 (1st Cir. 1966)............................. 14

*Cle-wave Industries, Inc. of Puerto Rico v. Hertz & Co.*, 48 F.R.D. 312 (D. PR 1969) ................................................................................................................. 12

*Consolidated Aluminum Corp. v. Hi-Tech Ceramics, Inc.*, 7 U.S.P.Q. 2d 1910 (W.D.N.Y. 1988) .............................................................................................. 17, 18

*Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343 (Fed. Cir. 2002)................................................................................ 6, 7

*Dodco Inc. v. American Bonding Co.*, 7 F.3d 1387 (8th Cir. 1993) ........................................ 12, 13

*Edwards v. Radventures, Inc.*, 164 F.Supp. 2d 190 (D. Mass. 2001)............................................ 7

*Filtrol Corp. v. Kelleher*, 467 F.2d 242, 245 (9th Cir. 1973) ................................................. 18, 19

*Forum Financial Group, LLC v. President and Fellows of Harvard College, 199 F.R.D. 22 (D. Me. 2001)* ........................................................................................... 15, 16

*Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1 (1979)...................................... 7

*Gottlieb v. Sandia Corp.*, 452 F.2d 510 (3rd Cir. 1971) .......................................................... 13, 14

*Harris v. Glando-o-Lac Co.*, 211 F.2d 238 (6th Cir. 1954).............................................. 14

*In Re Lernout Hauspie Securities Litigation*, 337 F. Supp. 2d 298 (D. Mass. 2004).................. 14

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................... 6, 9

*Jet Mfg. Co., Inc. v. Sanford Ink Co.*, 330 Mass. 173 (1953) ...................................... 14

*Kahn v. General Motors Corporation*, 889 F.2d 1078 (Fed. Cir. 1989) ............................... 17, 18

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464 (W.D. Va. 2001) ................... 19

*Kraemer v. Croix Management Co. et al.*, 2002 WL 31718426 (D. Minn. 2002) ...................... 14

*K-Tel International, Inc. v. Zuro*, 176 U.S.P.Q. 464 (D. Minn. 1971) .......................... 17

*Manchester Modes, Inc. v. Lilli Ann Corporation*, 306 F. Supp. 622 (S.D.N.Y. 1969) ........................................................................................................ 10

*Maruzen International Co. Ltd. v. Bridgeport Merchandise, Inc.*, 770 F. Supp. 155, 159 (S.D.N.Y. 1991) ........................................................................... 9, 10

*Modern Computer Corp. v. Ma, et al.*, 862 F.Supp. 938, 949 (E.D.N.Y. 1994) ......................... 18

*Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003) .................................. 19

*Orefile v. Cavelview Convalscent Center, Inc.*, 66 F.R.D. 136 (E.D. Pa. 1975) ......................... 16

*Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162 (D. Mass. 2001) .................................... 15

*PPS, Inc. v. Jewelry Sales Representatives, Inc. et al.*, 392 F.Supp. 375 (S.D.N.Y. 1975) ........................................................................................... 11, 12, 16

*Raul International Corp. v. No-Era Gear Corp.*, 28 F.R.D. 368 (S.D.N.Y. 1961) ...................... 12

*RF Delaware v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (Fed. Cir. 2003) ...................................................................................................... 19

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) .................................. 15

*Samson Cordage Works v. Wellington Puritan Milis Inc.*, 303 F.Supp 155 (D. R.I. 1969) ......................................................................................... 10, 11, 12, 16

*Tatro v. Manor Care, Inc.*, 416 Mass. 763 (1994) ....................................................................... 7

*Tuff Torq Corp. v. Hydro Gear Ltd. et al.*, 882 F.Supp. 359, 365 (D. Del. 1994) ....................... 17

*United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080 (1st Cir. 1992) ........................................................................ 7, 8

## Statutes

M.G.L. c. 223 § 38 .......................................................................................................... 14, 15

M.G.L. c. 223A ..................................................................................................................... 6

M.G.L. c. 223A § 3(a) (2000 ed.) ...................................................................................... 7

**Rules**

Fed. R. Civ. P. 4(f)(3) ............................................................................................... 15

Fed. R. Civ. P. 4(h)(1)....................................................................................... 9, 10, 14, 15

Fed. R. Evid. 4 ............................................................................................................ 15

Plaintiffs Furukawa Electric North America, Inc.[1] and OFS Fitel Inc. (collectively, "OFS") hereby oppose Defendant Yangtze Optical Fibre and Cable Company Ltd.'s ("YOFC's") Motion to Dismiss or In the Alternative to Stay Proceedings (the "Motion to Dismiss"). YOFC's Motion to Dismiss should be denied because this Court has personal jurisdiction over YOFC and OFS has appropriately served YOFC through its agent. The Court also should reject YOFC's request that this case be stayed pending resolution of an unrelated case in the United Sates District Court for the Northern District of Georgia. OFS has the right to enforce its patent rights against all infringers simultaneously, and should not be forced to wait for serial relief from each.

## INTRODUCTION

YOFC's sole basis for contesting jurisdiction is its allegation that service on its exclusive sales, marketing and technical operations agent for North American was insufficient. It does not contend that the Court otherwise would not have personal jurisdiction over YOFC. Nor does it dispute that it received actual prompt notice of the Complaint.

When it suits its purposes, YOFC not only avails itself of this Court's jurisdiction, but declares, under oath, that it "regularly visits…Massachusetts…to conduct business." Declaration of E. Page Wilkins, Esq. ("Wilkins Decl."), Ex. I at ¶ 3. In a case brought by YOFC and currently pending before Judge Harrington in this Court, (*YOFC v. Lucent Technologies Inc.*, C.A. No. 03 CV 11413 EFH, referred to herein as the "Lucent Case"), YOFC successfully defeated a motion to transfer venue to another District. In doing so, it relied on an affidavit of Niels Gade, YOFC deputy general manager, the same declarant employed by YOFC in support of the Motion to Dismiss. For purposes of keeping the Lucent Case in this District, Mr. Gade

---

[1] The correct corporate name for the plaintiff is Furakawa Electric North America, Inc. ("FENA"). Plaintiffs' intend to file a motion to amend the complaint to correct the name, but defendant will not assent to the Motion. In order not to delay the brief on defendant's motion to dismiss, plaintiffs have deferred filing the motion to amend to correct the name until after this motion is fully briefed.

told Judge Harrington that YOFC has a sister company, Draka USA Inc., headquartered in

Franklin, Massachusetts, and that:

> From time to time YOFC employees travel to the United States for
> business.  During these trips, YOFC *regularly visits* Draka USA's
> Franklin Massachusetts headquarters *to conduct its business*.

*Id*., Ex. I at ¶ 3.

Notwithstanding its own availment of this Court's jurisdiction in the Lucent Case, and

notwithstanding its own admission that it regularly conducts its business at its sister company's

office in Massachusetts, YOFC now argues that this court lacks personal jurisdiction over it

because service of the summons and complaint was insufficient.

As detailed below, OFS served the summons and complaint in hand on YOFC's

managing or general agent for North American sales, marketing and technical operations.  *See*

Wilkins Decl., Ex. C.  There is no question that YOFC received actual and timely notice that it

had been sued.  Within a week after service, YOFC issued a press release saying:

> Yangtze Optical Fibre and Cable Company Ltd. (YOFC)…has learned that
> Furukawa Electric North America (Furukawa) and its subsidiary OFS Fitel LLC
> (together, OFS) recently filed a complaint against YOFC in the United States
> District Court for the District of Massachusetts.…OFS alleges that YOFC has
> infringed several intellectual U.S. patents…..Accordingly, YOFC intends to
> defend this lawsuit and its reputation vigorously.

*Id.*, Ex. A.

The instant motion is not about whether this Court has personal jurisdiction over YOFC.

It is not about whether YOFC has actual notice of the suit.  Rather, it is about whether service on

YOFC's North American sales, marketing and technical operations office in Massachusetts was

sufficient or whether, instead, OFS must effect service through the Hague Convention, only to

find the parties in this very same court many months from now.

**Factual Background**

OFS is an optical fiber innovator and manufacturer headquartered in Norcross, Georgia. As a successor in interest to Lucent Technologies optical fiber business (which, in turn, was a successor to AT&T), OFS holds a number of key patents to optical fiber products and the methods for manufacturing them.

YOFC is a joint venture, formed in 1988 between Philips of the Netherlands and China's Ministry of Posts and Telecommunications. According to its website, it is the "third largest fibre manufacturer in the world." *Id.* at Ex. E. It promotes the fact that it has sold optical fiber products throughout the world, including throughout the United States. *See id.*, Ex. E.

In January 2005, YOFC "announced the establishment of it's [sic] North American Sales, Marketing and Technical Operations Team." *See id.*, Ex. A. In its press release, YOFC announced that Crawford Cutts, an individual working and residing in Sturbridge, Massachusetts, would operate as YOFC's "exclusive sales agent[] for North America." *Id.* In the same press release, Mr. Cutts announced that he was "very pleased to be representing YOFC in North America." *Id.* The press release ends with YOFC's "US Contact" -- listed as:

> US Contact:
> Crawford Cutts
> Director, North American Sales
> YOFC
> Bendwood Drive, Suite 50
> Sturbridge, MA 01566

*Id.* YOFC issued another press release listing Mr. Cutts as its Director for North American Sales in May 2005. *Id.,* Ex. B. In that release, YOFC again listed its US Contact as Crawford Cutts, Director, North American Sales. *Id.* It also listed Mr. Cutts' e-mail address as crawford.cutts@yofcna.com. *Id.*

Mr. Cutts is the President of and conducts business through Antares International

Development, LLC ("Antares"), a Massachusetts Limited Liability Company.  Declaration of

Crawford Cutts ("Cutts Decl.") ¶¶ 1-2.  In its role as YOFC's "Sales, Marketing and Technical

Operations team," Antares is responsible for, among other things, promoting and selling the

YOFC products alleged to infringe OFS's patents, collecting payments from customers for

orders of those products, and providing technical support and after-sales service for customers

who purchase those products.  *See id.*, Ex. A at ¶¶ 1, 3.  Antares is YOFC's presence in North

America.  *See* Wilkins Decl., Ex. D.[2]

YOFC is a "corporate member" in the Massachusetts-based New England Fiberotptic

Council ("NEFC"), headquartered in Chestnut Hill, Massachusetts.  *See id.*, Ex. F.  Another of its

U.S. representatives, William Beck (apparently also an Antares employee), is listed as the

president-elect of that Massachusetts organization, representing YOFC.  *See id.*  YOFC was an

exhibitor at NEFC's premier trade show, FiberFest, in Boxborough, Massachusetts in May 2005.

Declaration of Michele Neifing ("Neifing Decl."), ¶ 7.

YOFC, through Antares, has been actively offering for sale and selling the infringing

products in Massachusetts and elsewhere in the United States.  *See* Neifing Decl., ¶ 7-13.  Mr.

Cutts has visited at least one major OFS customer in Massachusetts on behalf of YOFC to

promote and sell infringing products.  *See id.*, ¶ 11.  The exclusive focus of Antares in

Massachusetts is to promote and sell YOFC products in North America.[3]  YOFC is using its

Massachusetts-based "North American Sales Team" to engage in acts of infringement in the

United States. *See id.*, ¶ 9; Wilkins Decl., Ex. E.

---

[2] On August 11, 2005, OFS filed a related case against Antares, claiming infringement of the same patents as are asserted in this case.

[3] According to the agreement between YOFC and Antares, Antares is precluded from representing or selling any fiber optics products in North America manufactured by any other company.  Cutts Decl., Ex. A, ¶ 3(b).

Because Antares/Mr. Cutts is, in fact, the exclusive marketing, sales and technical operations agent for YOFC in North America, and Mr. Cutts is listed as YOFC's Director of North American Sales, OFS served Mr. Cutts with the Summons, Complaint and related materials regarding this matter on June 10, 2005.

## Argument

### I.     YOFC's Contacts With Massachusetts Are Sufficient for the Court to Exercise Personal Jurisdiction Over It For This Action

YOFC's only basis for challenging this Court's personal jurisdiction is its claim that service on Mr. Cutts and Antares was insufficient.  It does not contend that it is not otherwise subject to this Court's jurisdiction under the Massachusetts long-arm statute and the due process clause of the United States Constitution.  Nor could it.

The facts alleged and admitted in this case leave no doubt that YOFC's contacts with Massachusetts are sufficient for this Court to exercise jurisdiction over it for this patent infringement case.  Through its exclusive agent, Mr. Cutts/Antares, YOFC maintains its only United States presence in Massachusetts.  *See* Wilkins Decl., Ex. D.  YOFC holds Mr. Cutts and Antares' Massachusetts office out to its customers and to the public generally as the United States sales, marketing and technical operations office of YOFC.  *See id.*, Ex. C.

Moreover, YOFC, through its deputy general manager, admits that it "regularly visits" the headquarters of its sister company, Draka Inc., in Franklin, Massachusetts, "to conduct its business."  *See id.*, Ex. I at ¶ 31.  YOFC further admits that, for the past two years, it has been working with its counsel in Boston, Massachusetts, to develop and prosecute a lawsuit in this District against Lucent Technologies Inc. *See id.*, Ex. I at ¶ 4.

Federal Circuit Law governs issues of personal jurisdiction in a patent infringement case. *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343,

1348 (Fed. Cir. 2002).  The first step in the analysis is to determine "whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Id.* at 1349. Here, YOFC does not contend that it is not amenable to service, but rather that service on its exclusive North American agent was not sufficient service on YOFC.

In fact, there can be no question that YOFC is susceptible to process and to the personal jurisdiction of this Court.  "Rule 4 of the Federal Rules of Civil Procedure allows a plaintiff to rely on the long-arm statute of the state in which the federal district court sits to obtain statutory authorization for the exercise of personal jurisdiction." *Id.* at 1350.[4]  The Massachusetts long-arm statute, M.G.L. c. 223A, permits "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."  *"Automatic" Sprinkler Corp. v. Seneca Foods Corp.*, 361 Mass. 441, 424 (1972).  Because this is a federal question case, the constitutional limits are established by the due process requirements of the Fifth Amendment.  *See id.* at 1350. The Federal Circuit, in considering due process issues under the Fifth Amendment, looks to the two-prong test from *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny: (1) the defendant must have "minimum contacts" with Massachusetts; and (2) the exercise of personal jurisdiction must not be so unreasonable as to violate "fair play and substantial justice." *Id.* at 1350-51.

The "minimum contacts" prong of the due process standard aligns with the specific jurisdiction requirements of the Massachusetts long-arm statute.  Under the Massachusetts long-arm statute, specific personal jurisdiction may be exercised over a defendant who has transacted any business in the Commonwealth if the plaintiff's claim arises out of the transaction of such

---

[4] YOFC may well be susceptible to this Court's personal jurisdiction under other statutes or rules.  However, in light of the Court's clear jurisdiction under the Massachusetts long-arm statute, analysis of other sources – which would require discovery – is not necessary.

business.  M.G.L. c. 223A § 3(a) (2000 ed.); *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767

(1994); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5 (1979); *Edwards v.

Radventures, Inc.*, 164 F. Supp. 2d 190, 194 (D. Mass. 2001); *United Electrical, Radio and

Machine Workers of America v. 163 Pleasant St.  Corp.*, 960 F.2d 1080, 1089 (1ˢᵗ Cir. 1992).

This corresponds to the Fifth Amendment due process requirements that the defendant

"purposefully directed" its activities into the forum and that the claims in the litigation arise out

of or relate to the defendant's activities in the forum.  *Deprenyl Animal Health*, 297 F.3d at 1351.

The "transacting any business" prong is to be interpreted in a "generous manner."  *United

Electrical*, 960 F.2d at 1087.  "The defendant need not have a physical presence in

Massachusetts.  The test focuses instead on whether the defendant attempted to participate in the

Commonwealth's economic life."  *Id.*; s*ee also Akro Corp. v. Luker*, 45 F.3d 1541, 1542, 1549

(Fed. Cir. 1995) (finding minimum contacts to satisfy federal due process where neither

defendant nor his agent had ever visited the forum state).

   Under the Massachusetts long-arm statute, consistent with the limits of due process,

specific jurisdiction requires not only that the foreign defendant have transacted business in the

Commonwealth, but also that the cause of action arise from such transactions.  M.G.L. c. 223A,

§ 3(a); *Tatro*, 416 Mass. at 767; *United Electrical*, 960 F.2d at 1088-89.  The First Circuit has

articulated a three part test to determine if that linkage exists:

> To summarize these principles, we today suggest a tripartite test
> for the ascertainment of specific jurisdiction.  First, the claim
> underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities.  Second, the defendant's in-state
> contacts must represent a purposeful availment of the privilege of
> conducting activities in the forum state, thereby invoking the
> benefits and protections of that state's laws and making the
> defendant's involuntary presence before the state's courts
> foreseeable.  Third, the exercise of jurisdiction must, in light of the
> Gestalt factors, be reasonable.

*United Electrical*, 960 F.2d at 1089.

Here, OFS's cause of action is for patent infringement, based on YOFC's offers for sale and sales of optical fibers in the United States in violation of the United States patent laws. YOFC's exclusive agent, engaged specifically to promote, sell and support the infringing products, is Antares/Mr. Cutts, headquartered in Massachusetts. *See* Wilkins Decl., Exs. B, C. For all purposes other than the instant motion, YOFC promotes Mr. Cutts and his Massachusetts office as YOFC's North American office. *Id.* In addition, YOFC participates in the Commonwealth's economy and takes advantage of our resources through its corporate membership in the New England Fiberoptic Council ("NEFC"), headquartered in Chestnut Hill, Massachusetts, and has exhibited at that organization's premier trade show in Boxborough, Massachusetts. *See* Neifing Decl., ¶ 7. Mr. Cutts, on behalf of YOFC, has called on at least one major OFS customer in Massachusetts to promote and sell YOFC's infringing products. *See id.* ¶ 11. There can be no question that (1) OFS's claims arise out of these forum related activities; and (2) YOFC's Massachusetts contacts, through Mr. Cutts and Antares, represent a purposeful availment of the privilege of conducting activities in Massachusetts. Thus, the first two prongs of the First Circuit test are satisfied.

The "Gestalt factors" identified in the third prong of the First Circuit's test are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*United Electrical*, 960 F.2d at 1088, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Each factor favors jurisdiction:  (1) YOFC is not burdened by appearing in this district; in fact, as plaintiff, it elected and fought to remain in this Court; (2) Massachusetts has an interest in adjudicating a dispute centered around the activities of one of its residents as the exclusive United States representative of YOFC; (3) OFS certainly sought this forum as one suitable to obtain convenient, fair and effective relief; (4) adjudication in this court, where OFS has also sued Antares for infringement of the same patents in a related case, will promote judicial efficiency; and (5) the United States and its federal courts must be accessible to protect against the infringement of United States patents by defendants who are actively promoting and selling infringing products in the Commonwealth and elsewhere in the United States.

Furthermore, the "Gestalt factors" were developed to insure that the exercise of personal jurisdiction would not be so unreasonable as to "offend traditional notions of fair play and substantial justice."  *Id.* at 1087-88; citing *International Shoe*, 326 U.S. at 316.  Here, where YOFC is presently litigating as a plaintiff in this very Court and where YOFC admits to regularly conducting business in Massachusetts, it is inconceivable that subjecting it to personal jurisdiction offends any notice of fair play and substantial justice.

## II. Service on Cutts was Effective as He is YOFC's "General or Managing Agent" for Purposes of Service of Process Under Rule 4(h)(1) of the Federal Rules of Civil Procedure.

Rule 4 provides that service on a foreign corporation may be accomplished within a judicial district of the United States by "delivering a copy of the summons and complaint to . . . a managing or general agent of the Corporation."  Fed. R. Civ. P. 4(h)(1).  "This requirement has been loosely interpreted, requiring merely that service constitute some assurance that the corporation is apprised of its status as a named defendant in the lawsuit." *Maruzen International Co. Ltd. v. Bridgeport Merchandise, Inc.*, 770 F. Supp. 155, 159 (S.D.N.Y. 1991).  "It is well established that when, because of its activities through a local entity, a corporation is doing

business for jurisdictional purposes within a district, that entity is its 'managing or general agent' within [Rule 4]." *Samson Cordage Works v. Wellington Puritan Milis Inc.*, 303 F. Supp. 155, 160 (D. R.I. 1969).

The *Samson Cordage* case is instructive. In *Samson Cordage*, the Court evaluated whether service on the defendant was effective where the plaintiff served the Summons and Complaint on a manufacturer's representative that sold the defendant's products (among others). *See id.* at 157. Like Antares/Cutts, the manufacturer's representative in *Samson Cordage* was not an employee of the defendant, did not work for a company that was owned by the defendant, and allegedly did not have final authority to bind the defendant. *See id.* In finding that service on the defendant through the manufacture's representative was nonetheless appropriate, the Court relied on the representative's extensive involvement in the defendant's business, including that the representative: (1) was paid on commission; (2) called on potential customers; (3) solicited and wrote orders; (4) had technical expertise and made recommendations regarding the defendant's products; (5) provided promotional materials about defendant's products to customers; (6) was responsible for customer service; (7) was in constant communication with the defendant regarding sales activities; and (8) attended and participated in trade shows across the country for the defendant. *See id.*

What constitutes a "managing or general agent, " therefore, does not hinge on formalities such as an employer-employee relationship or organizational structure. *See Maruzen International*, 770 F. Supp. at 159. Rather Rule 4(h)(1) requires that when serving through a managing or general agent "service upon [the agent] justifies the belief that defendant [corporation] will be apprised of the suits pending against it." *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F. Supp. 622, 626 (S.D.N.Y. 1969) (internal citations omitted).

The present case presents a situation strikingly similar to that in *Samson Cordage*.
Mr. Cutts admits that he and Antares solicit customers for YOFC in Massachusetts.  *See* Cutts
Decl., ¶ 7.  The contract between Antares/Cutts and YOFC makes clear that Antares/Cutts is
exclusively responsible for running YOFC's marketing, sales and technical operations in North
America.  *See* Cutts Decl., ¶¶ 6-7, Ex. A.  In that agreement, Antares/Cutts "[i]s appointed as
[YOFC's] exclusive sales representative," and agrees to:

> (1)  "[U]se its best efforts to solicit, promote, and sell [YOFC's] products;"
> (2)  Maintain an "adequately trained sales organization" for YOFC;
> (3)  "Generate and stimulate interest" in YOFC products and provide marketing data to YOFC;
> (4)  Refrain from selling or promoting any products that compete with YOFC's products;
> (5)  Participate in YOFC's "sales promotion activities;"
> (6)  Assist YOFC in the collection of monies due to YOFC from customers;
> (7)  "[P]rotect and promote" YOFC's "name, reputation and goodwill;"
> (8)  Provide technical and post-sales support to YOFC's customers;
> (9)  Enforce YOFC's distribution policies and practices with respect to resellers;
> (10)  Sell between $2.5 million and $11 million of YOFC products;
> (10)  Make quarterly reports to YOFC summarizing its sales activities for YOFC;
> (11)  Maintain the confidentiality of YOFC's information; and
> (12)  Receive a commission on all sales of YOFC products.

*See* Cutts Decl., Ex. A.

Furthermore, Antares/Cutts routinely appear at trade shows under the YOFC name.  *See*
Neifing Decl., ¶¶ 9-10.  Antares/Cutts also operates under an email address that identifies him as
part of YOFC.  *See* Wilkins Decl., Ex. B.  The Court in *Samson Cordage* relied on just these
types of activities to determine that the manufacturer's representative in that case was the
defendant's "managing or general agent."  *See Samson Cordage*, 303 F.Supp. at 157, 161.

The *Samson Cordage* court's analysis is in no way unique.  For example, *PPS, Inc. v.
Jewelry Sales Reps., Inc. et al.*, 392 F. Supp. 375 (S.D.N.Y. 1975), the court faced facts again
strikingly similar to those present in this case and again found that the manufacturer's
representative was a "managing or general agent."  *See id.* at 378-379.  In *PPS,* the agent:  was

the manufacturer's exclusive distributor; only solicited orders, which it sent on to the manufacturer; did not have authority to bind the manufacturer; and was paid only a commission on the sales it solicited. *See id.* Furthermore, the manufacturer in *PPS* actually made the products; shipped the products directly to customers; billed customers directly; and retained control of all order acceptance and pricing. *See id.* The situation in *PPS* is, therefore, exactly the same as that presented in this case, and the result should, accordingly, be the same. *Compare id. with* Cutts Decl., ¶ 7-8 *and* Ex. A. *See also Raul Int'l Corp. v. No-Era Gear Corp.*, 28 F.R.D. 368, 372 (S.D.N.Y. 1961) (on facts very similar to those in *Samson Cordage*, *PPS* and the present case, court held that service of process on manufacturer's representative was effective as to manufacturer because representative was "managing agent"); *Cle-wave Indus., Inc. of Puerto Rico v. Hertz & Co.*, 48 F.R.D. 312, 314-315 (D. PR 1969) (same).

The cases relied upon by YOFC to demonstrate that Mr. Cutts is not a "managing or general agent" of YOFC do nothing of the sort. Each is based on a set of facts that are clearly distinguishable from those present in this case. Moreover, the standards recited and applied in the cases cited by YOFC, when applied to the present situation, make clear that Mr. Cutts qualifies as a "managing or general agent" under Rule 4(h)(1).

In *Dodco Inc. v. American Bonding Co.*, 7 F.3d 1387 (8th Cir. 1993), the Court was presented with a situation where service was made on a third-party corporation that served as a *non-exclusive* bonding agent for the defendant. The Company served in *Dodco* was only one of several (if not many) entities that were apparently possessed of parallel responsibilities and authorization within the jurisdiction. *See id.* at 1387-89. Significantly, the bonding agent in *Dodco* did not have the extensive high-level responsibilities that Mr. Cutts has assumed on behalf of YOFC. The bonding agent was not the sole "Director" of the defendant's North

American Sales division.  The bonding agent did not comprise the entirety of the defendant's North American "sales, marketing and technical operations team."  The bonding agent was not the defendant's sole representative to industry organizations in North America.  Nor was the bonding agent the sole entity in North America responsible for assisting in collection of debts from customers, or providing technical support to customers, or enforcing distribution practices for the defendant with respect to resellers.  *See id.* at 1388.  In short, while Cutts/Antares constitutes, and is responsible for, the sum total of YOFC's North American "sales, marketing and technical operations," the bonding agent in the *Dodco* case was nothing more than one of many salesmen employed by the defendant.  The non-exclusive nature of the bonding agent's agency and the limited scope of his responsibilities were the determining factors in finding that he was not a "managing" agent for service of process.  *See id.*

*Gottlieb v. Sandia Corp.*, 452 F.2d 510 (3rd Cir. 1971) similarly dealt with facts inapposite to those before the Court.  In *Gottlieb*, the plaintiffs sued an individual defendant and a corporate defendant.  *See id.* at 512.  The individual defendant had been given authority only to negotiate the transaction at issue in the litigation.  *See id.* at 513-514.  The plaintiff had not served the individual defendant in its corporate capacity.  *See id.* at 514-515.  The return of service on the corporation came back "not found."  *See id.* at 514.  The District Court found only that the individual was a "negotiating" or "transactional" agent.  *See id.* at 513.  There was no evidence regarding the individual defendant's operations on behalf of the corporation beyond the assertion in the Complaint that he was authorized to negotiate the single transaction at issue in the litigation.  *See id.* at 513-514.  None of these facts are present in this case.  Instead, Mr. Cutts himself admits to the broad scope and significant nature of the responsibilities he fulfills for YOFC.  *See* Cutts Decl., ¶¶ 6-8, Ex. A.

Significantly, the standards applied by the court in *Gottlieb* demonstrate that Cutts/Antares is, in fact, a "managing or general agent" for YOFC. As that Court explains, a "managing or general agent" is "'a responsible party in charge of any substantial phase' of the corporation's activity." *Id*. at 515 (internal citations omitted). The Court also notes that a managing or general agent will perform duties "sufficiently necessary to the corporation's operations," and that "it is reasonable to expect that such an agent will have broad executive responsibilities." *Id*. (internal citations omitted). YOFC publicly states, and Mr. Cutts confirms by sworn statement, that he is responsible for the entirety of YOFC's North American sales, marketing or technical operations. Under the test applied in the *Gottlieb* case, therefore, Cults/Antares *is* the managing or general agent of YOFC in North America.[5]

As Antares/Cutts is YOFC's "managing or general agent," OFS's service of the Summons and Complaint on Cutts was effective service under Fed. R. Civ. P. 4(h)(1) and the Defendant's Motion to Dismiss should, therefore, be denied.[6]

_____

[5] The other two cases cited by defendants with respect to the "managing or general agent" question are *Harris v. Glando-o-Lac Co.*, 211 F.2d 238 (6th Cir. 1954) and *Kraemer v. Croix Mgmt. Co. et al.*, 2002 WL 31718426 (D. Minn. 2002). The *Harris* case consists of a one paragraph decision with absolutely <u>no</u> discussion of the facts or the application of any standard with respect to who is a "managing or general agent." *See, generally Harris* 211 F.2d at 238. In the *Kraemer* case, the court expectedly ruled that service of process on the administrative assistant for a property management company was not effective service on an *individual defendant* who owned the property. *See Kraemer*, 2002 WL 31718426 at *1-2. Neither of these cases are useful in evaluating whether Antares/Cutts is YOFC's "managing or general agent."

[6] Service on Cutts/Antares was also authorized by M.G.L. c. 223 § 38, which permits service on a foreign corporation which "is engaged in or soliciting business in the Commonwealth, either permanently or temporarily," by effecting service on the "agent…in charge of the business." *See Campbell v. Frontier Fishing and Hunting Ltd.*, 10 Mass. App. Ct. 53, 55 (1980) (approving service on individual in Massachusetts who promoted and marketed Canadian Fishing tour company to Massachusetts residents as effective service under and comporting with the due process requirements for personal jurisdiction). *In Re Lernout Hauspie Secs. Litig.*, 337 F. Supp. 2d 298, 322 (D. Mass. 2004) (addressing Massachusetts standards for service on agent under M.G.L. c. 223 § 38); *Jet Mfg. Co., Inc. v. Sanford Ink Co.*, 330 Mass. 173 (1953) (service on sales representative resident in Massachusetts effective under M.G.L. c. 223 § 38). The cases relied upon by YOFC for the proposition that "mere solicitation" is not enough to warrant service and personal jurisdiction under § 38 miss the point. Here, Antares/Cutts are YOFC's sole agent for promotion, sales and technical support of the infringing products, engaged not only in solicitation of orders, but also participating in trade groups and trade shows. Furthermore, in this case, the cause of action for patent infringement directly relates to Antares/Cutts activities in Massachusetts. *See Caso v. Lafayette Ratio Electronics Corp.*, 370 F.2d 707, 712 (1st Cir. 1966).

**III.    The Court Should Approve Service of YOFC Through Antares/Cutts Pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure**

Even assuming, *arguendo*, that service has not been made in strict compliance with Fed. R. Civ. P. 4(h)(1) or M.G.L. c. 223 § 38, the Court should exercise its discretion pursuant to Fed. R. Civ. P. 4(f)(3) to approve the means of service used by OFS. Rule 4(f)(3) provides that service may be made on a foreign corporation "by other means not prohibited by international agreement as may be directed by the court." "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002). *See also, Forum Financial Group, LLC v. President and Fellows of Harvard College,* 199 F.R.D. 22, 22-23 (D. Me. 2001). The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the "sound discretion of the district court." *Rio Props.* 284 F.3d at 1015. Moreover, the Advisory Committee Notes make clear that Rule 4(f)(3) is an appropriate alternative to other means of service of a foreign entity, even when that entity resides inside a country which is a signatory to the Hague Convention. *See* Fed. R. Evid. 4 advisory committee's note.

As discussed above, Antares/Cutts is YOFC's exclusive sales, marketing and technical support presence in the United States. Antares/Cutts is aggressively selling and promoting YOFC's infringing products by attending trade shows and calling on OFS customers.[7] *See* Neifing Decl., ¶¶ 7-12. Plaintiffs are not aware of any other entity or individuals on which they could effectuate service for this litigation within the United States. Service in the People's Republic of China under the Hague Convention can take between four to nine months to accomplish. *See* Wilkins Decl., Ex. G. Failure to provide a means for OFS to effectuate service

---

[7] In deciding the Motion to Dismiss the Court must take OFS's allegations of infringement as true. *See Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 164 (D. Mass. 2001).

outside the Hague Convention will result in almost a year passing before OFS can even begin to protect its intellectual property rights.[8]  Such a delay will significantly increase the harm suffered by OFS as a result of YOFC's infringement of the patents-in-suit.

**IV.    If the Court Determines that the Undisputed Facts Do Not Establish The Sufficiency of Service on YOFC Through Cutts, Expedited Discovery Should Be Allowed To Determine The Exact Nature and Scope of the Relationship Between YOFC and Antares/Cutts.**

The determination as to whether service on an agent constitutes effective service is an intensely fact-specific inquiry.  *See, e.g., Samson Cordage*, 303 F.Supp at 160; *Orefile v. Cavelview Convalscent Center, Inc.,* 66 F.R.D. 136, 142 (E.D. Pa. 1975); *PPS., Inc.*, 392 F.Supp. at 378.  In this case, the analysis will turn on the nature of Antares/Cutts' activities on YOFC's behalf and on the interaction between YOFC and Antares/Cutts.  In the event that the Court determines that the above-referenced, undisputed facts do not establish the sufficiency of service of process in this matter, OFS respectfully requests that the Court allow OFS expedited discovery on the issues pertinent to the validity of service.

**V.    The Court Should Not Stay This Matter.**

In a final attempt to avoid facing OFS's allegations of infringement, YOFC requests that this Court stay this action in favor of an action captioned *Furukawa Electric North America, Inc. v. Sterlite Optical Technologies, Inc., et al.*, civil action no. 1:02-CV-2149 CAP, currently pending in the Northern District of Georgia (the "Georgia Action").[9]  *See* Motion to Dismiss, p. 13.  The Court should deny this request because: (1) the Georgia Action involves neither the same defendant nor the same infringing product or processes as this case; (2) the Georgia Action involves only three of the four patents asserted in this case; U.S. Patent No. 4,820,322 (the "'322

---

[8] In the alternative, OFS respectfully requests that the Court approve service on YOFC through its litigation counsel in Lucent Case.  Service on YOFC's counsel in a similar matter, which is actively being pursued by YOFC is, likewise, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.  *See Forum Financial, 199 F.R.D.* at *24-25.*

[9] YOFC's motion mis-identifies the case caption as *Fitel USA Corp. v. Fibercore, Inc.*

patent") is not even asserted in the Georgia Action; (3) YOFC's argument regarding the possible efficiencies to be gained through issue preclusion is nonsensical; (4) there is no trial date set in the Georgia Action, and it could be years before that matter is litigated to conclusion; (5) the absence of the '322 patent from the Georgia Action would require that this case proceed in any event; and finally, (6) OFS would be severely prejudiced should it be forced to endure YOFC's infringement of its patents during the indefinite period that this matter would be stayed.

In deciding a motion to stay, a court "should consider the extent to which the issues and parties are identical and, where they are not substantially identical, a court *would not be justified* in granting a stay of one of the proceedings." *Consolidated Aluminum Corp. v. Hi-Tech Ceramics, Inc.*, 7 U.S.P.Q. 2d 1910, 1910 (W.D.N.Y. 1988) (emphasis added); *See also Kahn v. General Motors Corporation*, 889 F.2d 1078, 1081-1083 (Fed. Cir. 1989) (reversing District Court's grant of a stay because requirement that same parties and same issues are involved in the matters not satisfied); *Tuff Torq Corp. v. Hydro Gear Ltd. et al.*, 882 F.Supp. 359, 365 (D. Del. 1994) (holding that it would be "fundamentally unfair" to stay litigation when same parties could not participate in both).

Neither the parties nor the issues in the Georgia Action are co-extensive with those presented in this case. The Georgia Action involves a completely different defendant, with no connection or relation to YOFC.[10] The Georgia Action involves different infringing processes and products. There will, therefore, be no overlap in the infringement analysis and no guarantee that the same claim terms will be at issue. Moreover, the '322 patent is not even asserted in the Georgia Action. There cannot be any serious contention that the parties and issues in the Georgia Action and this case are "substantially identical" and the Court should, therefore, reject

---

[10] In contrast, *K-Tel International, Inc. v. Zuro*, 176 U.S.P.Q. 464 (D. Minn. 1971) (cited by YOFC), involved two "mirror-image" suits (one for infringement and one for a declaratory judgment of non-infringement and invalidity with respect to the same patents and parties).

YOFC's request to stay this matter. [11] *See Kahn*, 829 F.2d 1078 at 1081-1082 (discussing how two suits involving same patents asserted against two infringers still present different issues which preclude staying one in favor of another); *see also Modern Computer Corp. v. Ma, et al.*, 862 F. Supp. 938, 949 (E.D.N.Y. 1994).

Staying this case will not result in any significant economies of time or effort for the Court, counsel or the parties. A stay will only result in a lengthy delay of the resolution of OFS's claims against YOFC. No date has been set for the *Markman* hearing in the Georgia Action and, consequently, the timing of the other milestones in that matter, which will be triggered by the Court's issuance of its *Markman* decision, remains indefinite. *See* Wilkins Decl., at Ex. K.[12] Moreover, the schedule in the Georgia Action does not even reach pre-trial and trial dates.[13] Also, there is a high likelihood that the losing party in the Georgia Action will appeal, further delaying a final resolution of that matter. Of course, there is no conceivable argument that the Georgia Action will render a timely decision with respect to the '322 patent, which is not even at issue in that case.

Likewise, a stay in favor of the Georgia Action will not promote judicial efficiency. The Georgia Action will not resolve any factual questions regarding YOFC's infringement of OFS's

---

[11] Defendant's argument that validity issues overlap as between this matter and the Georgia Action is a red herring. *See Filtrol Corp. v. Kelleher*, 467 F.2d 242, 245 (9th Cir. 1973) (upholding district court's denial of stay and recognizing that the potential of one matter to invalidate the patents-in-suit was not sufficient grounds for staying second case because infringement issues would still need to be resolved if patents found valid and that there was no guarantee that invalidity determination would have preclusive effect in second matter). If accepted, it would mean that any patent-holder would be limited to suing only one defendant at a time because in almost every patent case allegations of invalidity are raised as a defense to infringement. The case of *Consolidated Aluminum Corp. v. Hi-Tech Ceramics, Inc.*, cited by defendants in support of their argument regarding an overlap in validity issues, dealt with a situation clearly distinguishable from the present circumstances. In that case: (1) the plaintiff *conceded* to a stay on validity issues; (2) the same patents were at issue in both matters; and (3) the competing matter had already been tried and the parties were awaiting a decision. *See* 7 U.S.P.Q. 2d at 1910-1911.
[12] The Court in the Georgia Action has been asked to interpret over thirty-five disputed claim terms in its *Markman* decision. *See* Wilkins Decl., Ex. J.
[13] The Georgia Action, therefore, is in a materially different position than the favored litigation in *Consolidated Aluminum*, 7 U.S.P.Q. 2d at 1911, cited by YOFC, where the matter had already been tried and the parties were only awaiting a decision. *See Consolidated Aluminum*, 7 U.S.P.Q. 7d at 1910-1911.

patents.  Likewise, because different infringing products and processes may put different claim terms in contention, the Georgia Action will not necessarily resolve any of the claim construction issues as to the patents common to both matters.  In any event, the preclusive effect of claim construction in the Georgia Action is far from certain, even with respect to terms that might be at issue in both cases.[14]  Finally, and most obviously, the Georgia Action will not provide any efficiency at all with respect to the '322 patent, which is not at issue in that case.  Thus, YOFC and OFS will still have to litigate many of the same factual and legal issues in this Court, no matter what happens in the Georgia Action.  *See e.g. Filtrol Corp.*, 467 F.2d at 244, 245.

Finally, YOFC's request for a stay should be rejected because if a stay is granted, OFS will be severely prejudiced.  So long as this action is stayed, OFS will be unable to prevent YOFC from infringing on its patent rights.[15]  OFS will, therefore, risk *per se* irreparable harm for the years that it will take for the Georgia Action to be litigated to finality.  *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003) (*per se* irreparable harm)**.**

For all of these reasons, the Court should reject YOFC's attempt to avoid a full and fair adjudication of OFS's claims and deny the request to stay this matter in favor of the Georgia Action.

---

[14] The law regarding whether a prior claim construction should be given preclusive effect in later proceedings is far from clear.  *Callicrate v. New Age Industrial Corp., Inc.*, 2005 WL 1027095 (D. Kan. 2005) (collecting cases).  The Federal Circuit has provided little guidance, and courts are split on the issue.  *See id.*  Here, it is impossible to predict whether any claim construction from the Georgia Action will be given preclusive effect because the decision will be based, in part, on whether the case ends with a "final judgment on validity or infringement."  *See*, *e.g.*, *RF Delaware v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (Fed. Cir. 2003) (prior claim construction ruling had no preclusive effect where parties of prior action settled after partial summary judgment); *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 466-67 (W.D. Va. 2001) (doctrine of collateral estoppel cannot apply to Markman determination when prior action ended in settlement).
[15] Unless, of course, YOFC is willing to stipulate to entry of a Preliminary Injunction which prevents them from practicing any of the allegedly infringing methods or using, selling or offering for sale any of the allegedly infringing products while the matter is stayed.

19

## <u>CONCLUSION</u>

For the reasons set forth herein, YOFC's motion should be denied.

Dated:  August 12, 2005

Respectfully submitted,

By: /s/ E. Page Wilkins
Sarah Chapin Columbia (BBO# 550155)
Carlos Perez-Albuerne (BBO# 640446)
E. Page Wilkins (BBO# 654535)
CHOATE, HALL & STEWART
Two International Place
Boston, Massachusetts 02110
(617) 248-5000