UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11219-RGS

FURUKAWA ELECTRIC COMPANY
OF NORTH AMERICA; OFS FITEL LLC

v.

YANGTZE OPTICAL FIBRE AND
CABLE COMPANY LTD.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS OR, IN
THE ALTERNATIVE, TO STAY PROCEEDINGS

November 16, 2005

STEARNS, D.J.

On June 10, 2005, plaintiffs Furukawa Electric Company of North America
(Furukawa) and OFS Fitel LLC (OFS) brought this Complaint for patent infringement
against Yangtze Optical Fibre and Cable Co. Ltd. (YOFC), a Chinese company that
develops, manufactures, and sells optical fiber and cable products. The Complaint alleges
infringement of four of Furukawa's U.S. patents.[1]

YOFC moves to dismiss the Complaint on the ground that Furukawa and OFS have
not served process on YOFC and, as a result, that the court lacks personal jurisdiction.
Alternatively, YOFC requests that the court stay these proceedings pending resolution of
a separately filed matter in the Northern District of Georgia, Furukawa Electric North
America, Inc. v. Sterlite Optical Technologies, Inc., 02-CV-2149-CAP. At the November

---

[1]The Complaint does not specify which of YOFC's products are allegedly infringing.

9, 2005 hearing on the motion to dismiss, plaintiffs argued that they had made service on YOFC's de facto managing agent in Massachusetts in satisfaction of Rule 4.  In the alternative, plaintiffs assert that YOFC clearly has notice of the litigation, and that the court should, in its discretion, deem service on the putative agent as adequate under Fed. R. Civ. P. 4(f)(3).

BACKGROUND

None of the parties to this action is incorporated in or has a principal place of business in Massachusetts.  Furukawa is a Delaware corporation with a principal place of business in Norcross, Georgia.  OFS, a subsidiary of Furukawa, is also based in Norcross, Georgia and is a successor in interest to Lucent Technologies' optical fiber business. YOFC, a joint venture formed in 1988 between Philips of the Netherlands and the PRC Ministry of Posts and Telecommunications, maintains a principal place of business in Wuhan, China.

On June 10, 2005, plaintiffs served a summons and a copy of the Complaint on Crawford Cutts, President and sole shareholder of Antares Development International, LLC (Antares), at the Sturbridge, Massachusetts offices of Antares. YOFC and Antares have a contractual relationship under which Antares solicits customers for YOFC's optical fiber business. Antares holds itself out as YOFC's North American sales representative and represents YOFC at trade shows.  YOFC sets the terms, prices, and conditions of all sales to customers in the United States and has the unfettered discretion to accept or reject any purchase order that Antares forwards to YOFC.  In brief, Antares has "no authority to bind [YOFC] in any manner whatsoever."  The Agreement further places no restrictions on

2

Antares' (or Cutts') ability to represent companies other than YOFC (other than an agreement by Antares not to market products that directly compete with those of YOFC). Antares is paid on a commission basis. YOFC keeps no inventory in Massachusetts or anywhere else in the United States. It has no bank accounts or telephone listing in Massachusetts. YOFC has not identified an agent for service of process in Massachusetts.

DISCUSSION

There are two issues: whether Antares/Cutts is YOFC's "managing or general agent" within the meaning of Fed. R. Civ. P. 4(h)(1), or if not, whether the court will waive formal service as permitted by Rule 4(f)(3).[2] Rule 4 provides that service on a foreign corporation may be accomplished within a judicial district of the United States by "delivering a copy of the summons and complaint to . . . a managing or general agent of the Corporation." Fed. R. Civ. P. 4(h)(1). Section (f)(3) of Rule 4 permits the court to authorize service on a foreign corporation "by other means not prohibited under international agreement as may be directed by the court."

Plaintiffs rely principally on the observation in Samson Cordage Works v. Wellington Puritan Mills Inc., 303 F. Supp. 155, 160 (D.R.I. 1969), that "[i]t is well-

---

[2]With respect to the request for a stay, Furukawa and OFS argue that the Georgia action involves neither the same infringing product or processes and only three of the four patents at issue. There is no trial date scheduled, and plaintiffs fear that it may be years before the Georgia matter is litigated to a conclusion. See Solomon Decl., Ex. D (Scheduling Order). There is no dispute as to personal jurisdiction. YOFC concedes it does business in Massachusetts. (In litigation involving Lucent Technologies currently pending in another session of this court, YOFC defeated a motion to transfer venue by declaring that it "regularly visits Massachusetts . . . to conduct business." Wilkins Aff. ¶ 3 (C.A. No. 03- CV 11413-EFH)).

established that when, because of its activities through a local entity, a corporation is doing business for jurisdictional purposes within a district, that entity is its 'managing or general agent' within [Rule 4]." Id. Furukawa and OFS argue an identity in circumstances between Antares and the manufacturer's representative in Samson, who like Antares was not an employee of the defendant, did not work for a subsidiary of the defendant, and did not have the authority to bind the defendant. In finding Wellington to have been properly served through its manufacturer's representative, the court in Sampson relied on the representative's extensive involvement in Wellington's business, noting that he: (1) was paid on commission; (2) called on potential customers; (3) solicited and wrote orders; (4) had technical expertise and made recommendations regarding the defendant's products; (5) distributed promotional materials about the defendant's products; (6) was responsible for customer service; (7) was in constant communication with the defendant regarding sales activities; and (8) attended and participated in trade shows across the country on the defendant's behalf.

YOFC counters by directing the court to cases holding that a sales representative cannot be a managing agent for Rule 4 purposes if the salesman does not have the discretion to establish prices, terms or conditions of contracts or orders "beyond the normal scope of a sales agency." Dodco, Inc. v. American Bonding Co., 7 F.3d 1387, 1389 (8th Cir. 1993). See also PPS, Inc. v. Jewelry Sales Reps, Inc., 392 F. Supp. 375 (S.D.N.Y. 1975).

> [T]he determination whether an individual is "a managing or general agent" depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which

are "sufficiently necessary" to the corporation's operations. He should be "a responsible party in charge of any substantial phase" of the corporation's activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity. Authority to act as agent sporadically or in a single transaction ordinarily does not satisfy this provision of the Rule.

Gottlieb v. Sandia American Corp., 452 F.2d 510, 513 (1st Cir. 1971).

In Gottlieb, the agreement with the plaintiff had been signed by the president and the secretary of Sandia American and not by Wechsler (the individual upon whom the complaint was served). The complaint did not allege that Wechsler was a managing or general agent, but simply "an agent for SANDIA and authorized by SANDIA to negotiate the acquisition of WORLD WIDE." The defendants' answer denied that Wechsler "was anything but tax counsel in negotiating the exchange of the stock." Id. at 513-514.  The Court held that on these pleadings, plaintiffs had not carried their burden of showing that Wechsler had been served in a representative rather than an individual capacity as he had not been shown to have sufficient authority to act as Sandia's general agent.  Id. at 514-515.

The agreement between Antares and YOFC stipulates that

[t]he Representative shall have no authority to bind the Company in any manner whatsoever.  Products shall be sold upon the terms, prices and conditions set by the Company, which maybe changed from time-to-time by the Company at its sole discretion.  All orders and quotations shall be taken and given in the Company's name.  The Company may reject or refuse, in whole or in part, any orders or requests for quotations submitted by the Representative.  The Company shall have no liability to the Representative for failure to fulfill any order and shall have the sole right to make any and all credit decisions.

Cutts Decl., Ex. A ¶ 7.  Given Antares' highly circumscribed authority to act in matters

concerning YOFC, it does not qualify as YOFC's managing or general agent for Rule 4 purposes.

Plaintiffs also argue that the court should allow service on YOFC pursuant to Fed. R. Civ. P. 4(f)(3). While China is a party to the Hague Convention, Furukawa and OFS have not attempted to make service on YOFC pursuant to the Convention. The First Circuit Court of Appeals has cautioned that "strict adherence to the Civil Rules is the better practice." Aoude v. Mobil Oil Corp., 862 F.2d 890, 895 (1st Cir. 1988). A canvas of the cases in this Circuit regarding service of process demonstrates great deference to the Hague Convention as "the 'law of the land' under the supremacy clause of the Constitution." Cooper v. Makita, U.S.A., Inc., 117 F.R.D. 16, 17 (D. Me. 1987). See also Ballard v. Tyco Intern., Ltd., 2005 WL 1863492, *2 (D.N.H.) ("The Hague Convention provides a mechanism through which a plaintiff can effect service that will give appropriate notice to the party being sued and will not be objectionable to the nation in which that defendant is served."); Golub v. Isuzu Motors, 924 F. Supp. 324, 328 (D. Mass. 1996) (requiring plaintiff to proceed under the Hague Convention where there is a "reasonable prospect that the plaintiff will ultimately be able to serve the defendant properly."); Borschow Hosp. & Medical Supplies, Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472, 478 (D.P.R. 1992) (discussing the duty of serving documents in a manner consistent with the Hague Convention). Plaintiffs have not demonstrated that they had good cause to circumvent compliance with the Hague Convention; they simply complain that making service under the Convention is burdensome and expensive. This is not a sufficient reason to excuse compliance with the COnvention. See Trask v. Service Merchandise

6

Co., Inc., 135 F.R.D. 17, 22 (D. Mass. 1991) ("[T]he absence of at least a good faith attempt to comply with the Hague Convention prohibits this court from applying the liberal standards of Fed.R.Civ.P. 4 in analyzing the propriety of service . . .."). Given the fact, however, that the case is in its infancy and that YOFC has complained of no undue hardship in pursuing its own litigation interests in this district, the court will give plaintiffs an opportunity to cure the defect in service.

ORDER

For the foregoing reasons, YOFC's motion to dismiss will be <u>DENIED</u> without prejudice. Defendant is granted leave to renew the motion to dismiss should plaintiffs fail to make proper service under the Hague Convention within one hundred twenty (120) days of the date of this Order (or make diligent good faith efforts to do so). The motion to stay the proceedings is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

8