UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FURUKAWA ELECTRIC COMPANY OF NORTH AMERICA; OFS FITEL LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-cv-11219-RGS |
| vs. | ) ) ) | |
| YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD., | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR ALTERNATIVE SERVICE, OR IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME TO SERVE THE DEFENDANT UNDER THE HAGUE CONVENTION**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs Furukawa Electric North America, Inc. and OFS Fitel Inc. (collectively, "OFS") hereby move this Court for an order allowing service of the Summons and Complaint in this matter upon Defendant Yangtze Optical Fibre and Cable Company Ltd. ("YOFC") through hand delivery to YOFC's Massachusetts attorneys, Sullivan & Worcester LLP. In the alternative, OFS seeks an order granting an additional 100 days to serve YOFC under the Hague Convention.

**I. PROCEDURAL BACKGROUND**

OFS is an optical fiber innovator and manufacturer headquartered in Norcross, Georgia. It is a subsidiary of Furukawa Electric Company of North America. OFS was previously constituted as the Fiber Optic Division of Lucent Technologies, Inc. YOFC is a joint venture, formed in 1988 between Philips of the Netherlands and China's Ministry of Posts and

1

Telecommunications. YOFC touts itself as the "third largest fibre manufacturer in the world" and boasts that it has sold optical fiber products throughout the world, including throughout the United States. Wilkins Decl., Ex. A. YOFC does business in the United States through Antares Development International, LLC ("Antares"), a Massachusetts Limited Liability Company, and its two principals, Crawford Cutts and Bill Beck. Declaration of Crawford Cutts ("Cutts Decl.")[1], ¶¶ 1-2; Wilkins Decl., Ex. G. In its role as YOFC's North American "Sales, Marketing and Technical Operations team," Antares is responsible for: (1) promoting and selling the YOFC products alleged to infringe OFS' patents; (2) collecting payments from customers for orders of those products; and (3) providing technical support and after-sales service for customers who purchase those products. *See* Cutts Decl., Ex. A at ¶¶ 1, 3. The exclusive focus of Antares is to promote and sell YOFC products in North America.[2] Mr. Beck holds himself out to the public as YOFC's Director of North American Sales. Wilkins Decl., Ex. F, p. 1.

As recently as October, 2005, YOFC was a plaintiff before this Court in a matter captioned *YOFC v. Lucent Technologies Inc.*, C.A. No. 03 CV 11413 EFH (the "*YOFC v. Lucent* Matter"). YOFC vigorously pursued its claims in that action for over two years. Wilkins Decl., Ex. B (Court Docket). YOFC was represented in the *YOFC v. Lucent* Matter by Sullivan & Worcester LLP, the same counsel that represents it in this case. *Compare,* Wilkins Decl., Exs. B & C (Court Dockets). In the *YOFC v. Lucent* Matter, YOFC made claims against OFS' predecessor in interest, Lucent Technologies, Inc., based on YOFC's sale of fiber optic cable to Lucent. Wilkins Decl., Ex. D (*YOFC v. Lucent* Complaint).

On June 10, 2005, OFS filed this patent infringement suit against YOFC alleging that YOFC has infringed and is infringing four of OFS' patents through its use, offer for sale and/or

---

[1] The Declaration of Crawford Cutts was submitted to the Court by YOFC on July 21, 2005 (docket entry no. 7).
[2] According to the agreement between YOFC and Antares, Antares is precluded from representing or selling any fiber optics products manufactured by any other company. Cutts Decl., Ex. A, ¶ 3(b).

sale of certain fiber optic products in the United States.  On June 10, 2005, OFS served the Summons and Complaint in hand on Mr. Cutts, the President of Antares.

Several days after service of the Summons and Complaint on Mr. Cutts, YOFC issued a press release stating:

> Yangtze Optical Fibre and Cable Company Ltd. (YOFC)…has learned that Furukawa Electric North America (Furukawa) and its subsidiary OFS Fitel LLC (together, OFS) recently filed a complaint against YOFC in the United States District Court for the District of Massachusetts….OFS alleges that YOFC has infringed several intellectual U.S. patents…..Accordingly, YOFC intends to defend this lawsuit and its reputation vigorously.

Wilkins Decl., Ex. E.

Contrary to the statement in its press release, YOFC has declined to defend this lawsuit at all.  On June 28, 2005, YOFC's long-time Massachusetts attorneys, Sullivan & Worcester LLP, filed a Motion to Extend the time for YOFC to answer the Complaint. Wilkins Decl., Ex. C. YOFC then filed a Motion to Dismiss, alleging that service on Mr. Cutts was insufficient.  OFS opposed that motion.

On November 16, 2005, the Court denied YOFC's Motion to Dismiss without prejudice (the "November 16 Order").  The November 16 Order granted YOFC "leave to renew the motion to dismiss should plaintiffs fail to make proper service under the Hague Convention within one hundred twenty (120) days of the date of the [Court's Order] (or make diligent good faith efforts to do so)."  November 16 Order, p. 7.  In its November 16 Order the Court noted that, but for the issue of service of process, "[t]here is no issue as to personal jurisdiction" over YOFC.  *See* November 16 Order, fn 2.

## II.    OFS' GOOD FAITH EFFORTS TO SERVE YOFC UNDER THE HAGUE CONVENTION

Upon receipt of the November 16 Order, OFS' counsel immediately initiated the steps required to effectuate service under the Hague Convention. Under the Hague Convention, the party seeking to serve process on a defendant in China must deliver a Chinese translation of the Complaint, its Exhibits and any related materials to an administrative department of the government of China. *See* Hague Convention on Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (20 U.S.T. 361, T.I.A.S. 6638; 28 U.S.C.A. (Appendix following Rule 4 FRCP); 16 I.L.M. 1339 (1977)); *Obtaining Evidence in China*, U.S. State Department, available at http://travel.state.gov/law/info/judicial/judicial_694.html (March 10, 2006); Affidavit of Patricia Barron, dated December 29, 2005 ("Barron Aff."). From that point, actual service of the documents on the defendant is made by the government of China. *Id.*

OFS commissioned an international service firm to translate the Complaint and related documents (including the four patents-in-suit) and deliver them to the Central Authority in China (the "Central Authority"). By December 29, 2005, translation of the 62 pages of the Summons, Complaint, Exhibits and related materials was complete, and the documents were delivered to the Central Authority. Barron Aff., ¶ 4. Actual service on YOFC is now under the sole control of the Central Authority in China. *Id.*; Affidavit of Patricia Barron, dated March 7, 2006 ("Supp. Barron Aff."), ¶¶ 4, 6. The experienced outside vender engaged by OFS estimates that service on YOFC is likely to take anywhere from three to five months from December 29, 2005. Barron Aff., ¶ 7. OFS has not yet received notice from the Central Authority that YOFC has been served.

4

**Argument**

I.  **PURSUANT TO RULE 4(f)(3) THE COURT SHOULD APPROVE SERVICE OF PROCESS ON YOFC THROUGH ITS LONG-TIME MASSACHUSETTS ATTORNEYS**

The Court should exercise its discretion pursuant to Fed. R. Civ. P. 4(f)(3) to allow service on YOFC through its counsel.  Rule 4(f)(3) provides that service may be made on a foreign corporation "by other means not prohibited by international agreement as may be directed by the court." Fed. R. Civ. P. 4(f)(3).  "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'  It is merely one means among several which enables service of process on an international defendant." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002).  *See also, Forum Financial Group, LLC v. President and Fellows of Harvard College,* 199 F.R.D. 22, 22-23 (D. Me. 2001).  To fulfill constitutional due process requirements, the method approved by the Court under Rule 4(f)(3) must be "reasonably calculated" to give notice to the defendant.  *See Rio Props., Inc.,* 284 F.3d at 1016.  The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the "sound discretion of the district court." *Id.* at 1015.  Moreover, the Advisory Committee Notes make clear that Rule 4(f)(3) is an appropriate alternative to other means of service of a foreign entity, even when that entity resides inside a country which is a signatory to the Hague Convention.  *See* Fed. R. Evid. 4 advisory committee's note.

Allowance of alternate service under Rule 4(f)(3) is wholly appropriate in this case, where: (1) the defendant, YOFC, has unquestionably had notice of the litigation for over eight months; (2) the Court has already found that it has personal jurisdiction over YOFC; (3) there is no question that the proposed means of service -- hand delivery to YOFC's counsel of record in both this and other matters before the Court -- will result in notice to YOFC; (4) at the time this action was filed YOFC was actively availing itself of this Court as a Plaintiff in a case involving

similar subject matter (i.e. its sales of fiber optic products); and (5) OFS has diligently attempted to serve YOFC under the Hague Convention, but due to the Chinese Government's delay, service has not been accomplished.

A.    YOFC Has Had Actual Notice of OFS' Suit For Over Eight Months

It is beyond question that YOFC has had actual notice of this case for over eight months. On June 17, 2005, just seven days after OFS served Mr. Cutts with the Complaint, YOFC issued a press release admitting that "[OFS] recently filed a complaint against YOFC in the United States District Court for the District of Massachusetts," and that the suit "alleges that YOFC has infringed several intellectual U.S. patents," and that "YOFC intends to defend this lawsuit and its reputation vigorously."  Wilkins Decl., Ex. E.

YOFC knows it has been sued.  It knows the claims that have been made against it.  The Court should now allow service to be accomplished and provide YOFC the ability to "defend this lawsuit and its reputation vigorously," as it was so anxious to do in June of 2005.

B.    This Court Has Already Held That It Has Personal Jurisdiction Over YOFC

Unlike many instances involving lack of service of process, in this case the Court has already determined that it has jurisdiction over YOFC.  In its November 16 Order the Court noted that "[t]here is no dispute as to personal jurisdiction[, as] YOFC concedes it does business in Massachusetts."

C.    The Proposed Means of Service Is Certain to Provide YOFC (yet again) With Actual Notice

To fulfill the constitutional requirements of due process, the method approved by the Court under Rule 4(f)(3) must be "reasonably calculated" to give notice to the defendant.  *See Rio Props., Inc.,* 284 F.3d at 1016.  Service on YOFC's long-time Massachusetts counsel, who have already made an appearance on behalf of YOFC in this very case and have recently

represented YOFC as a Plaintiff before this Court in a complex and heavily-litigated matter, is certain to give notice to YOFC. *See Rio Props.*, 284 F.3d at 1016-17 (holding alternative method of service, ordered by the district court pursuant to Rule 4(f)(3), on foreign corporation through company's United States courier and United States attorney constitutionally acceptable). *BP Prods. North America, Inc. v. Dagra*, 232 F.R.D. 263, 264-65 (E.D. Va. 2005), is instructive. In that case, as in the present matter, the plaintiff had difficulties accomplishing service on the foreign defendant under the Hague Convention. *Id.* at 264. The *BP Products* Court, pursuant to Rule 4(f)(3), approved the Plaintiff's request for alternate service on the foreign defendant through an attorney representing him in an unrelated matter pending in same court. *Id.* at 265. The *BP Products* Court recognized that "allowing a plaintiff to serve defendant's counsel is not a novel means of effecting service of process." *Id.* It observed that the attorney's ethical obligation to communicate with the defendant in the already-pending matter ensured that there would be opportunity for the same counsel to apprise the defendant of the claims made by the plaintiff. *Id.*

The present matter presents an even more compelling case than that present in the *BP Products* matter. In this case, the attorneys to be served have already made an appearance for the defendant in this case and, unlike the *BP Products* case, it is certain that YOFC has had actual notice of this suit for over eight months. Under these circumstance, it is more that reasonable to assume that Sullivan & Worcester is in communication with YOFC and that service of the Summons and Complaint on counsel is "reasonably calculated" to give notice to YOFC.[3] *See e.g. id.*

---

[3] As an alternative to service on YOFC's counsel, the Court could also approve re-service on Antares. Although the Court has previously determined that service of YOFC through Antares under Rule 4(h)(1) was not effective, that is an independent determination from whether, given the current situation, it is appropriate to allow service on Antares pursuant to Rule 4(f)(3). Given Antares' role in the sale and offer for sale of the alleged infringing products, its

D.    YOFC Has, Until Very Recently, Been Actively Availing Itself of This Court As A Plaintiff in a Case Involving Similar Subject Matter

The present situation presents an additional factor weighing in favor of allowing alternate service on YOFC through its counsel.  Until October of 2005 YOFC was a plaintiff before this very Court, pursuing claims against OFS' predecessor in interest based on related subject matter – sales of fiber optic cable.  For this, and the other reasons described above, this is decidedly not a case of a foreign defendant being hauled unaware into a distant, unfamiliar and unanticipated forum through novel means of service of process.  YOFC is a sophisticated business entity, which recently chose to avail itself of this Court to protect related legal interests.

E.    OFS Has Diligently Attempted to Achieve Service Under the Hague Convention

Immediately following the Court's issuance of its November 16 Order, OFS began the process of serving YOFC under the Hague Convention.  By December 29, 2005, over two and half months ago, it delivered the necessary materials to the Chinese government agency responsible for international service, completing all activity within its control necessary to accomplish service on YOFC in China.  There is nothing more that OFS can do to expedite service of process under the Hague Convention.  Despite OFS' diligence, the Chinese government (which is a part-owner of YOFC) has yet to complete service on YOFC.  Furthermore, there is no method to obtain an update from the Chinese government regarding when service may be effected.  *See* Barron Aff., ¶ 5.  Although past experience shows that service may take anywhere from three to five months, there are no guarantees as to when service will actually be completed.  *See id.* at ¶ 7.

---

exclusive, intimate and continuing relationship with YOFC, and the fact that there is overwhelming evidence that service on Antares would effectively give notice to YOFC (as it already has), allowance of alternate service on Antares also would be appropriate.

OFS has now attempted to accomplish service under the Hague Convention. Through no fault of its own, service under the Convention has not been accomplished. While OFS continues to wait for the Chinese government to act on its request, YOFC has effectively avoided answering for its infringement of OFS' intellectual property rights for the better part of a year, despite the fact that this Court has personal jurisdiction over YOFC.

Under these specific circumstances, allowing YOFC to further delay these proceedings would be a quintessential exercise in form over substance, and one which would continue to deprive OFS of a meaningful remedy for infringement of its patents. For all these reasons, OFS should, pursuant to Rule 4(f)(3), be allowed to effectuate service on YOFC through its counsel of record in this case.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD ALLOW OFS AN ADDITIONAL 100 DAYS TO SERVE YOFC UNDER THE HAGUE CONVENTION

As an alternative to approving the method of service used by OFS in this case, the Court should modify its November 16 Order to allow OFS an additional 100 days to serve YOFC under the Hague Convention before YOFC is entitled to renew its motion to dismiss. As discussed above, OFS has been diligent in responding to the Court's November 16 Order. In the event that the Court is not inclined to allow alternate means of service, OFS respectfully requests that the Court allow an additional 100 days for the Chinese government to complete service on YOFC and that the Court reconsider OFS' request for alternate service under Rule 4(f)(3) if, at the expiration of those 100 days, the Chinese government has still not completed service on YOFC.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should approve OFS' motion for alternative service on YOFC through YOFC's Massachusetts attorneys, or in the alternative, grant an

additional 100 days for the Chinese government to complete service on YOFC under the Hague

Convention.


Dated:  March 13, 2006

Respectfully submitted,


By: /s/ E. Page Wilkins
    Sarah Chapin Columbia (BBO# 550155)
    Carlos Perez-Albuerne (BBO# 640446)
    E. Page Wilkins (BBO# 654535)
    CHOATE, HALL & STEWART
    Two International Place
    Boston, Massachusetts 02110
    (617) 248-5000

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on March 13,

2006.

/s/ E. Page Wilkins
E. Page Wilkins

4053416v3